In re Verna Kay **HERMAN**, Debtor.

Verna Kay Herman, Plaintiff

v.

Johnny Milen Neely, Trustee and Gary Dean Jackson, Defendants.

Bankruptcy No. 02–64085.
Adversary No. 03–6029.

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

March 9, 2004.

Donald W. Cothern, Tyler, TX, for Plaintiff, Verna Kay Herman.

William Sheehy, Wilson, Sheehy, Knowles, Robertson & Cornelius, P.C., Tyler, TX, for Defendant, John Milen Neely, Trustee.

Gary D. Jackson, Jackson Law Offices, P.C., Lindale, TX, for Defendants, Gary Dean Jackson.

## MEMORANDUM OF DECISION

BILL G. PARKER, Chief Judge.

Now before the Court in the above-referenced adversary proceeding is the "Defendants' Motion For Summary Judgment" filed jointly by Johnny Milen Neely as Trustee and Gary Dean Jackson (collectively, "Defendants") on July 2, 2003, as well as the "Plaintiff's Response In Opposition To Defendants' Motion For Summary Judgment" filed by the Plaintiff, Verna Kay Herman ("Debtor" or "Plaintiff") on September 12, 2003. In addition, the Court also heard, in conjunction with

the Defendants' summary judgment motion, the "Motion of Johnny Milen Neely, Trustee, For Relief From the Automatic Stay," filed on April 23, 2003, including the Supplement thereto filed on June 2, 2003. A hearing was held on these matters at which the Court entertained oral argument from the parties. The Court, after reviewing the pleadings and considering the summary judgment evidence, including the oral argument presented, finds that the Defendants' Motion for Summary Judgment should be granted in part and denied in part, and that Defendant Neely's Motion for Relief from Stay should be denied. In addition, the Court concludes that the Motion to Avoid Judgment Lien filed by the Plaintiff–Debtor, which is inextricably tied to the same issues, shall be denied.[1]

### Factual Background

Prior to the petition date, the Debtor–Plaintiff was married to William John Chappell. The Debtor had three children, Kenneth Jeff Brown, II ("Jeff Brown"), Natalie Sherie Brown, and Wendy Kay Melton, none of which were the children of Mr. Chappell. On February 28, 1988, three agreements were executed whereby the three children agreed to loan money to their mother (the Debtor) and step-father (Mr. Chappell) to assist in the purchase of two tracts of land totaling 81.8 acres in Lindale, Texas, and the construction of a home thereon.[2] These three agreements provided for 9% interest on the loan, and Mr. Chappell promised to sell his land in Elkhart, Texas, and his house in Palestine, Texas, to repay the debt to the children.

Prior to any repayment of the loans made by the three children, the Debtor filed a petition for divorce against Mr. Chappell in the 321st District Court of Smith County, Texas. The Debtor was represented in the divorce by Defendant Gary Jackson. In the course of the divorce proceedings, Jeff Brown, individually, and Jeff Brown and Debtor as next friends of the minor children, Natalie Sherie Brown and Wendy Kay Melton, intervened to assert on behalf of the children certain interests in the marital property. The Divorce Decree and Judgment (the "Divorce Decree"), entered by the 321st District Court of Smith County, Texas, on July 1, 1994,[3] awarded the 81.8 acre community homestead property to the Debtor, simultaneously divesting Mr. Chappell of his interest in such properties.[4] The Divorce Decree further stated as follows:

> [The two tracts awarded to the Plaintiff] are further *impressed with a resulting trust for consideration paid* for said property from the social security payments of Jeff Brown in the sum of $32,815.02 ... and Natalie Sherie Brown in the sum of $33,270.77 ... and child support payments of Wendy Kay Melton in the sum of $28,169.00 ..., *said trust being secured by the imposition of an equitable lien in the stated sums* for the benefit of Intervenor Kenneth Jeff Brown II, Individually, and as Next

---

1. This Court has jurisdiction to consider the complaint and related contested matters pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The Court has the authority to enter a final judgment in this adversary proceeding and the related contested matters since they each constitute a core proceeding under the following sections of 28 U.S.C. § 157(b)(2): (A), (B), (G), (K), and (O).

2. *See* Addendum to Defendants' original Joint Proof of Claim, Ex. 3, 4, and 5. These two tracts of land, one being 81.1 acres and the other being .703 acres, constituted the community property homestead of the Debtor and Mr. Chappell during their marriage.

3. *See* Defendants' Motion, Ex. A.

4. *See supra* note 2 and accompanying text.

Friend of Natalie Sherie Brown and Wendy Kay Melton.[5]

Thereafter, pursuant to a transfer and assignment dated November 8, 2002, the interests awarded to Jeff Brown and Natalie Sherie Brown in the Divorce Decree, as well as their rights under the February 1988 agreements, were transferred to Defendant Neely. A second assignment was executed on November 19, 2002, wherein Wendy Kay Melton transferred 80% of the interest awarded to her in the Divorce Decree and her rights under the February 1988 agreement to Defendant Neely and the remaining 20% to Defendant Jackson.

On December 3, 2002, the Plaintiff–Debtor filed for relief under Chapter 13 of the Bankruptcy Code. The Debtor filed the current adversary complaint on June 2, 2003, seeking a determination of the validity, priority, and extent of the liens or other interests allegedly held by the Defendants in the two tracts of land. The Defendants answered by asserting that pursuant to the two assignments received in November 2002, they hold an interest in the real property itself arising from a resulting trust, or alternatively, that they hold an equitable lien on the subject property.

## Discussion

*Standards for Summary Judgment*

The Defendants bring their Motion for Summary Judgment in the adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56, which provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). "The inquiry to be performed is the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. "If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion." *Hunter v. Caliber System, Inc.,* 220 F.3d 702, 726 (6th Cir.2000) (*citing Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102–03 (9th Cir.2000)). As more particularly described by Judge William Wayne Justice in *Marshall Independent School Dist. v. U.S. Gypsum Co.,* 790 F.Supp. 1291 (E.D.Tex.1992):

Even where the non-moving party has the burden of persuasion on an issue, the summary judgment movant still has the initial burden of showing the ab-

---

5. *See* Defendants' Motion, Ex. A, p 8–9 (emphasis added).

sence of a genuine issue of material fact. It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove its case. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record. If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied, and the court need not consider either any evidence submitted by the non-moving party or whether the moving party has met its ultimate burden of persuasion that summary judgment should be granted in its favor.

*Id.* at 1299–1300.

The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial. If, as in this case, the burden of persuasion at trial must be borne by the non-moving party, the party moving for summary judgment may satisfy the burden of production under Rule 56 by either submitting affirmative evidence that negates an essential element of the non-moving party's claim, or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. See 10A WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 2727 at pp. 471–472 (1998); *see also Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 329–30 (3d Cir.1995); *Cannon v. Cherry Hill Toyota, Inc.,* 161 F.Supp.2d 362, 366 (D.N.J. 2001).

Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510 (*citing* FED.R.CIV.P. 56(e)). The substantive law will identify which facts are material. *Id.*

Thus, if a non-movant fails to set forth specific facts that present a triable issue, its claims should not survive summary judgment. *Giles v. General Elec. Co.,* 245 F.3d 474, 494 (5th Cir.2001). As the Supreme Court has stated,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552.

Hence, "in the absence of the necessary minimal showing by the plaintiff that the defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial." *Robinson v. Cutchin,* 140 F.Supp.2d 488, 491 (D.Md.2001) (*citing Catrett,* 477 U.S. at 323–24, 106 S.Ct. at 2548

and *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2505).

To determine whether summary judgment is appropriate, the record presented is reviewed in the light most favorable to the non-moving party. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, if the evidence demonstrating the need for trial "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250, 106 S.Ct. at 2511. Thus, a non-movant must show more than a "mere disagreement" between the parties, *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir.1993), or that there is merely "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. However, "[t]he issue of material fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–249, 106 S.Ct. at 2510. Accordingly, the process has been described by the Supreme Court as one which mandates the entry of summary judgment where the evidence is such that it would require a directed verdict for the moving party. "In essence, . . . the inquiry [is] . . . whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. *See also, In re Hudsar Inc.*, 199 B.R. 266, 272 (Bankr.D.N.J.1996) ["The evidence which the non-moving party produces to show the existence of a genuine issue must be of sufficient quantum and quality to allow a rational and fair-minded fact finder to return a verdict in favor of the non-movant, bearing in mind the applicable standard of proof that would apply at a trial on the merits."] (*citing Anderson*, 477 U.S. at 249–51, 106 S.Ct. at 2511).

In this case, the main issue raised by the Defendants' Motion involves the proper construction of the language utilized in the July 1, 1994, Divorce Decree. The parties agree that there is no contested factual determination necessary to the Court's resolution of the issues presented. For cases in which the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir.1995); *Thompson Everett, Inc. v. National Cable Advertising, L.P.*, 57 F.3d 1317, 1323 (4th Cir.1995) ["A federal court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly."].

 The Defendants assert in their motion that the 321st Judicial District Court of Smith County, Texas, in the Divorce Decree, "specifically found and recited . . . that [a] resulting trust was impressed upon the subject property because part of the consideration paid for the property [was] for funds belonging to the three intervenors (*i.e.*, the children)."[6] "It is well settled that when one party pays the purchase price of realty . . . but title is placed in the name of another, a purchase money resulting trust will arise in favor of the entity providing the purchase money." *See In re Marriage of Scott*, 117 S.W.3d 580, 583 (Tex.App.-Amarillo 2003, no pet. h.) (*citing Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex.1984)). Thus, the resulting trust doctrine involves the equi-

---

6. *See* Defendants' Motion, ¶ 2A.

table doctrine of consideration, which essentially recognizes valuable consideration, rather than legal title, as the deciding factor with respect to equitable title. *See Tolle v. Sawtelle*, 246 S.W.2d 916, 918 (Tex. Civ.App.-Eastland 1952, writ ref'd). Any imposition of a resulting trust, therefore, is based on the concept that the party who furnishes consideration for a purchase should receive equitable title to the item purchased. *Sheldon Petroleum Co. v. Peirce*, 546 S.W.2d 954, 957 (Tex.Civ.App.-Dallas 1977, no writ), *cited in In re Marriage of Loftis*, 40 S.W.3d 160, 164–65 (Tex.App.-Texarkana 2001, no pet. h.); *see also* 72 Tex. Jur.3d Trusts § 182 (2003) ["A resulting trust vests the equitable title to the property in the beneficiary and this equitable title is superior to the legal title held by the trustee."]. Accordingly, by asserting that they hold a resulting trust interest in the two tracts of land awarded to the Debtor in the Divorce Decree, the Defendants are claiming an actual ownership interest (*i.e.*, equitable title) in some percentage of the property.

 The Defendants base their assertions on the language used in the Divorce Decree, a final judgment which the Defendants assert cannot be collaterally attacked by the Debtor. The Defendants are correct that the *Rooker–Feldman* doctrine [7] normally applies to insulate a final state court judgment, including final decrees of divorce, from collateral attack in federal courts. *See Ganesan v. Vallabhaneni*, 78 Fed.Appx. 421 (5th Cir.2003). In fact, as stated by the Fifth Circuit in *Ganesan:*

> The *Rooker–Feldman* doctrine holds that federal district courts lack jurisdiction to entertain collateral attacks on

state judgments. *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir.1994). If the district court must examine issues that are "inextricably intertwined" with a state judgment, the [district] court is in essence being called upon to review the state-court decision, and the originality of the district court's jurisdiction precludes such a review. *Id.* Under the *Rooker–Feldman* doctrine, the appellant may not attempt to invalidate in federal court the state court judgment obtained in the common law marriage proceeding. *See id.*

*Id.*

However, courts have denied any preclusive effect to judgments which are inconsistent or ambiguous. *See Hardy v. Johns–Manville Sales Corporation*, 681 F.2d 334, 345 (5th Cir.1982). As stated in *Robinson v. Ariyoshi*, 753 F.2d 1468, 1472 (9th Cir.1985):

> Faced with the task of deciding our power to review constitutional issues which arise from a state court proceeding, we view the res judicata requirement of full and fair opportunity to litigate, and the *(Rooker)-Feldman* "inextricably intertwined" barrier to federal jurisdiction as two sides of the same coin. Under the rubric of either "jurisdiction" or "res judicata," the crux of the question is whether there has already been actual consideration of and a decision on the issue presented. If consideration and decision have been accomplished, action in federal court is an impermissible "appeal" from the state court decision. *See Reynolds v. Georgia*, 640 F.2d 702, 705–06 n. 2 (5th Cir.) *cert. denied*, 454 U.S. 865, 102 S.Ct. 326, 70 L.Ed.2d 165 (1981). If no consideration has been giv-

---

7. The *Rooker–Feldman* doctrine is derived from two opinions by the United States Supreme Court: *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 415, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

en, *or any decision on the matter is ambiguous*, it is unlikely that the issues presented to the state high court and to the federal court are so "inextricably intertwined" that the federal court cannot take jurisdiction. Nor is it likely that there will have been a full enough and fair enough opportunity for litigation to warrant the claim preclusive effect of res judicata.

*Id.* at 1472 (emphasis added). *See also, Crigler v. Axia Inc.*, 735 F.Supp. 868, 872 (N.D.Ill.1990) ["Accordingly, we find the circumstances here distinguishable from those in other cases where courts have refused to give preclusive effect to a prior state court judgment on the ground that they (the state court judgments) are vague or ambiguous."].

■ Moreover, under Texas law the "mere construction or interpretation of a judgment does not constitute a collateral attack." *Cadena v. Cadena*, No. 04–96–00634–CV, 1998 WL 39168, *3 (Tex.App.—San Antonio February 4, 1998, no pet. h.); *Wheeler v. American Nat'l Bank of Beaumont*, 338 S.W.2d 486, 500 (Tex.Civ.App.—Beaumont 1960), *aff'd in part, rev'd in part* 162 Tex. 502, 347 S.W.2d 918 (1961); *State v. Reagan County Purchasing Co.*, 186 S.W.2d 128, 136 (Tex.Civ.App.—El Paso 1944, writ ref'd w.o.m.); *United States v. 115.27 Acres of Land, Etc.*, 471 F.2d 1287, 1290 (5th Cir.1973). Thus, it is clear that this Court is not precluded from construing or interpreting the Divorce Decree if it is ambiguous or otherwise inconsistent on its face.

An examination of the plain language of the Divorce Decree entered by the 321st Judicial District Court reveals that it is internally inconsistent. The Divorce Decree first impresses the Debtor's property with a "resulting trust" in favor of Jeff Brown, individually and as next friend for the other two minor children. It thereby purports to award to the children an actual ownership interest in the property. *See Peirce*, 546 S.W.2d at 957; *Sawtelle*, 246 S.W.2d at 918 [the resulting trust doctrine recognizes that valuable consideration, rather than legal title, determines the equitable title or interest resulting from a transaction]. The decree immediately proceeds, however, to state that such trust is "secured by the imposition of an equitable lien in the stated sums for the benefit" of the three children.[8] If an actual ownership interest was being conveyed to the children, then no lien on such property would need be awarded in order to secure the payment of the indebtedness owed to the children. Because the two remedies are patently inconsistent with each other, the Divorce Decree is inherently ambiguous as to the proper construction of the remedy actually awarded to the children. *See, e.g., North Shore Laboratories Corp. v. Cohen*, 721 F.2d 514, 519 (5th Cir.1983) ["It is generally held that a document is ambiguous when it is reasonably susceptible to more than one meaning, in light of surrounding circumstances and established rules of construction."].[9] Hence, based on this ambiguity, the Divorce Decree may not be given any preclusive effect. *See, e.g., Johns–Manville Sales Corp.*, 681 F.2d at 345; *Ariyoshi*, 753 F.2d at 1472; *Crigler*, 735 F.Supp. at 872. Furthermore, regardless of the preclusive effect afforded the Divorce Decree, the mere construction

---

8. The Defendants recognize that such an inconsistency exists in the Divorce Decree when they argue that the language granting the children an equitable lien should be ignored as surplus language. *See* Defendants' Motion, ¶ 6.

9. *Overruled on other grounds, Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 174, 115 S.Ct. 1300, 1308, 131 L.Ed.2d 248 (1995).

or interpretation of the ambiguous decree by this Court does not constitute an impermissible collateral attack under Texas law. *See, e.g., Cadena,* No. 04-96-00634-CV, 1998 WL 39168, at \*3; *Wheeler,* 338 S.W.2d at 500; *Reagan County,* 186 S.W.2d at 136; *115.27 Acres of Land,* 471 F.2d at 1290.

■ Based on an examination of the entire Divorce Decree, it is clear that the 321st Judicial District Court did not grant the intervening children any type of *pro tanto* ownership interest in the two tracts of land. Although the Divorce Decree does make the singular statement that the two tracts of land "are further impressed with a resulting trust for consideration paid for said property," this statement is the only language in the entire Divorce Decree supporting the imposition of a resulting trust.[10] Nowhere does the 321st Judicial District Court discuss the total consideration paid for the property in relation to the amounts contributed by the intervening children, nor does it make any attempt to calculate the percentage of the purchase price actually contributed by the children. It makes no attempt to define the actual ownership interest in the two tracts of land to which the intervening children are entitled. These are obviously facts which would be crucial to any determination of a *pro tanto* division of property. Furthermore, the Divorce Decree fails to contain any language purporting to convey title to the intervening children based upon their (uncalculated) percentage interest in the real property. Instead, the Divorce Decree merely declares that the two tracts of land are impressed with a resulting trust, while proceeding immediately on the inconsistent course of imposing an equitable lien on the same property. Significantly, the Findings of Fact and Conclusions of Law issued by the 321st Judicial District Court on July 25, 1994, indicate that it meant for the two tracts of land to serve as security for the obligation owed to the children, rather than for the children to possess some pro rata percentage of the 81.8 acres.[11] The Court made the following specific findings in that regard:

¶ 2.29 The children of [Debtor] should have an equitable interest in or lien on the marital residence;

¶ 2.37 The marital residence should be impressed with an equitable lien to secure Intervenor, Kenneth Jeff Brown, II, and the minor children for social security and child support funds used to purchase the property and construct improvements on it; and

¶ 2.38 The amount of the equitable lien is equal to the total sum of the social security payments and child support payment of each child used to purchase and improve the 81 acres plus interest at nine per cent (9%).

Accordingly, construing the entire Divorce Decree, as well as the accompanying Findings of Fact and Conclusions of Law, the proper construction of the Divorce Decree is that the obligation owed to the children was to be secured by the Debtor's homestead property, rather than the children being awarded an actual *pro tanto* ownership interest in such property.[12]

10. *See* Defendants' Motion, Ex. A, p. 8.

11. *See* Plaintiff's Response, attachment to Ex. A.

12. In addition, the Court notes that the facts involved in this dispute are legally insufficient to support the imposition of a resulting trust. As already mentioned, Texas law recognizes a resulting trust when one party advances funds toward the purchase price of a piece of property but the title is taken in the name of someone else. *See Cohrs v. Scott,* 161 Tex. 111, 338 S.W.2d 127 (1960). This general rule, however, does not apply if the party paying the purchase price does so by way of a mere loan. *See Sahagun v. Ibarra,* 90 S.W.3d

Having concluded that the Divorce Decree recognizes an equitable lien against the two tracts of land awarded to the Debtor, rather than a resulting trust, the Court must now consider whether the Defendants, based on the assignments subsequently executed by each of the children, are entitled to foreclosure of the equitable liens at this point in time. In her adversary complaint, the Debtor alleges that the children failed to bring suit against her for the foreclosure of their liens within the applicable statute of limitations period, and that therefore the underlying debts owed to the children are unenforceable.[13] Hence, the Debtor argues that, because the underlying obligations owed by her to her children are unenforceable, and because the Defendants obtained their rights to the equitable liens solely from the children through the execution of the two assignments in November 2002, any attempt by the Defendants to foreclose on the equitable liens is similarly barred.

■ Under Texas law, the applicable statute of limitations for an action for debt is four years, and this limitations period does not begin to run until the cause of action accrues.[14] *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(3) (Vernon 2002) ["A person must bring suit on the following actions not later than four years after the day the cause of action accrues: debt."]. In determining when the children's respective causes of action accrued, the Court notes that there are two general approaches when a promise to repay money fails to include any defined time of

---

860, 863–64 (Tex.App.—San Antonio 2002, no pet. h.) ["To create a resulting trust, the payment must be made at the time of purchase and the person seeking to impose a resulting trust must have paid the money in the character of a purchaser. *No resulting trust exists in favor of one who pays the purchase price by way of mere loan to another and the conveyance is taken in the name of the borrower.* Thus, if A loans money to B, B purchases property with that money, and the conveyance is taken in B's name, no resulting trust arises in favor of A. However, if A pays the purchase price and causes the deed to the property to be placed in B's name, a resulting trust does arise in favor of A."] (emphasis added). Here, as evidenced by the February 28, 1988, agreements, the children merely loaned their funds to their mother and step-father. *See* Addendum to Defendants' original Joint Proof of Claim, Ex. 3, 4, and 5. Therefore, the facts of the current dispute do not support the imposition of a resulting trust.

Moreover, a finding that the Divorce Decree merely imposes an equitable lien against the property is also consistent with the prior positions asserted by the Defendants. For example, in his April 23, 2003, motion for relief from the automatic stay, Defendant Johnny Milen Neely, Trustee, states that his $195,022.89 claim "is secured by a duly perfected judicial lien...." Similarly, the Defen-

dants, in their original Joint Proof of Claim, state that the basis for their claim is a "Judgment Lien on Real Property."

**13.** *See* Plaintiff's Complaint, ¶ 6.

**14.** The Defendants argue that the ten-year statute of limitations applicable to judgments under TEX. CIV. PRAC. & REM.CODE § 34.001 (and the corresponding right of revival under TEX. CIV. PRAC. & REM.CODE § 31.006) should apply. However, the 321st Judicial District Court did not award the children a monetary judgment of any kind against the Debtor, did not issue any judgment of foreclosure against the Debtor, and did not otherwise affect the children's rights to seek recovery of the indebtedness owed by the Debtor. Instead, it merely imposed an equitable lien in support of that eventual recovery. There simply is not any collection judgment issued in 1994 *against the Debtor* from which the 10–year period could properly be said to have run. Rather, collection of the indebtedness against the Debtor is governed by the usual 4–year limitation for the collection of debt under § 16.004(a)(3). The Court also notes that the statute of limitations on a general breach of contract is also four years. *See, e.g., Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 869 (Tex.App.—San Antonio 1997, no writ) ["With respect to causes of action for breach of contract, a four-year statute of limitations applies."].

repayment. Under the majority rule, courts view the loan as repayable on demand and, because payment could be requested at any time, the action for repayment accrues immediately. Therefore, the statute of limitations period commences at the time the loan is made. *See, e.g., Maddox v. City of Fort Smith,* 346 Ark. 209, 219, 56 S.W.3d 375, 382 (2001); *Vanice v. Oehm,* 247 Neb. 298, 526 N.W.2d 648, 653 (1995); *Richardson v. Schaub,* 796 P.2d 1304, 1310 (Wyo.1990); *Akre v. Washburn,* 92 N.M. 487, 489, 590 P.2d 635, 637 (1979). On the other hand, the minority rule implies a promise to repay the loan upon the expiration of a "reasonable time." Hence, under this rule the statute of limitations begins to run at a reasonable time after the loan is made. This approach comports with the general rules of contract law, which complete the terms of incomplete contracts by adding reasonable terms. *See, e.g., Lightle v. Harcourt Mgmt. Co., Inc.,* 634 N.E.2d 858, 861 (Ind.Ct.App. 1994); *Stromblad v. Wilderness Adventurer, Inc.,* 577 P.2d 918, 921 (Okla.App.1978). It is unclear which approach would be applied by Texas courts.[15]

In the present case, the majority approach outlined above would cause the children's cause of action to accrue every month as their respective social security and child support funds were advanced to the Debtor and Mr. Chappell, thereby causing the applicable four-year limitations period to begin running separately with respect to each monthly advance by the children. Conversely, under the minority position outlined above, the statute of limitations would not have been triggered until after the expiration of a "reasonable time"

for the repayment of advances made by the children. Hence, the minority rule, by tolling the four-year statute of limitations until the expiration of a "reasonable time" for repayment, would provide the children, and thus their successors in interest (*i.e.,* the Defendants), with a longer period within which to file suit.

■ In resolving the current dispute, however, even if the Court were to adopt the most lenient standard which gives the greatest amount of time to the Defendants, *i.e.,* the "reasonable time" approach, the reasonable time for repayment had certainly expired by the time that the children sought to collect the indebtedness by seeking a judgment against the Debtor's co-obligor, Mr. Chappell. The suit against the Debtor's co-obligor would have been premature in June 1993 had a reasonable time for repayment of the debt not passed.[16] Yet, a suit to collect the indebtedness was brought in the name of the children at that time and the 321st District Court certainly did not find it unreasonable to proceed with the adjudication of the children's rights to repayment at the time the Divorce Decree was entered in July 1994. Because it originated as a joint obligation, there is no plausible basis upon which the Debtor would have received different repayment terms than her co-obligor, and therefore, because the cause of action against Mr. Chappell, one of the co-obligors on the loan, had obviously accrued as of June 9, 1993, the same would be true as to the accrual of the cause of action against the other co-obligor, the Debtor. Accordingly, the four-year statute of limitations for the recovery of the debt against

---

**15.** *Moore v. Dilworth,* 142 Tex. 538, 542, 179 S.W.2d 940, 942 (1944) appears to support the majority rule in respect to the collection of a promissory note, but its unusual fact situation, which dealt with an oral contract to pay a debt subsequent to the entry of a bank-

ruptcy discharge, precludes any general application of its holding.

**16.** *See* Plaintiff's Response, Attachment to Ex. A.

the Debtor began to run on that date and, absent the application of some intervening doctrine, the statute of limitations expired four years later, on June 9, 1997.

Because Jeff Brown had reached majority prior to 1993, his cause of action against the Debtor under the statutory four-year period expired on June 9, 1997, and any action he or any successor-in-interest may seek to pursue against the Debtor at this time for the recovery of the referenced debt is barred by the statute of limitations. Since any action to collect the underlying debt would be barred, the equitable lien claimed by Defendant Neely against the Debtor's homestead, based upon the assignment of Jeff Brown's rights under both the Divorce Decree and the February 1988 agreement, is also unenforceable. *See, e.g., McBryde v. Curry,* 914 S.W.2d 616, 619 (Tex.App.—Texarkana 1996, writ denied) ["Moreover, when a debt is barred by the statute of limitations, an action to foreclose on the security for the debt is also barred."]; *City of Gainesville v. Harder,* 147 S.W.2d 959, 963 (Tex.Civ. App.—Ft. Worth 1941), *aff'd,* 139 Tex. 155, 162 S.W.2d 93 (1942) ["Assuredly, there can be no lien without a debt, and the suit to establish the debt must be brought before the debt is barred, if the petitioner would avoid the penalty prescribed by the Statute of Limitations."]; *Holcroft v. Wheatley,* 112 S.W.2d 298, 299 (Tex.Civ. App.—Amarillo 1937, writ dism'd) ["The last of the series of notes evidencing a part of the consideration for the land was due May 20, 1923, and if no action to enforce the payment and foreclose the lien was brought thereon within four years from said date, limitations, if invoked, would bar a recovery on the notes, and since the lien is only an incident to the debt, no foreclosure of the lien could be enforced."]; *Fleming v. Todd,* 42 S.W.2d 123, 126 (Tex. Civ.App.—Beaumont 1931, writ dism'd by agr.); *Houston Ice & Brewing Co. v.*

*Stratton,* 40 Tex.Civ.App. 378, 89 S.W. 1111, 1112 (1905, no writ) [finding that an equitable lien exists only as an incident to the underlying debt, and the lien ceases to exist if the debt is extinguished by the running of the statute of limitations].

However, with respect to the other two children, an additional consideration applies. Texas law provides that the statute of limitations does not start running if a person entitled to bring a personal action is under a legal disability when the cause of action accrues: the time of disability is not included in limitations period. *See Burton v. State Farm Mut. Auto. Ins. Co.,* 869 F.Supp. 480, 484 (S.D.Tex.1994), *aff'd,* 66 F.3d 319 (5th Cir.1995). TEX. CIV. PRAC. & REM.CODE ANN. § 16.001 (Vernon 2002) then states as follows:

> For the purposes of this subchapter, a person is under a legal disability if the person is:
>
> (1) younger than 18 years of age, regardless of whether the person is married; or
>
> (2) of unsound mind.

*See* § 16.001(a).

Consequently, because both Natalie Sherie Brown and Wendy Kay Melton were younger than 18 years old at the time that their cause of action accrued in June of 1993, their legal disability tolled the statute of limitations until they reached 18 years of age. *See Burton,* 869 F.Supp. at 484 ["If a person who is entitled to bring a personal action is under a legal disability when the cause of action accrues, the time of the disability is not included in a limitations period."]; *Fidelity & Deposit Co. of Md. v. Risien,* 284 S.W. 977, 979 (Tex.Civ. App.—San Antonio 1926, no writ) ["Limitation did not begin to run against the note until the ward reached his majority."]. This tolling provision is unaffected by the fact an action may be maintained during

the time of disability through a next friend. *Weiner v. Wasson,* 900 S.W.2d 316, 320 (Tex.1995) ["Access to the courts does not alone provide a legally incapacitated person a viable opportunity to protect his legal rights. The disability of a person of unsound mind is not only the lack of access to the courts, but also the inability to participate in, control, or even understand the progression and disposition of their lawsuit.... [T]he purpose and scope of the tolling provision as applied to *minors* and persons of unsound mind, extends beyond merely ensuring their access to the courts."] (*citing Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 755 (Tex.1993)), (emphasis in original); *see also, Kaplan v. Kaplan,* 373 S.W.2d 271, 274 (Tex.Civ. App.—Houston 1963, no writ) ["The bringing of a suit by next friend for a minor in no way changes his status; his disabilities are not removed or suspended by bringing such suit"] (*citing Greathouse v. Fort Worth & Denver City Ry. Co.,* 65 S.W.2d 762, 765 (Tex. Comm'n App.1933, holding approved)).

Natalie Sherie Brown was born on November 11, 1976. Hence, she did not reach the age of 18 until November 11, 1994. Therefore, based on the general tolling rules set forth above, her four-year statute of limitations period did not start running until that date, and it thereafter expired on November 11, 1998, well before the filing of any suit to recover the debt and well before the filing of the Debtor's bankruptcy petition. Conse-quently, the obligation owed to Natalie Brown by the Debtor became unenforceable on November 11, 1998, and the equitable lien asserted by Defendant Neely against the Debtor's homestead, based solely upon the assignment to him of Natalie Brown's rights under both the Divorce Decree and the February 1988 agreements, also became unenforceable as of that date.

█ Wendy Kay Melton was born on May 28, 1981. She did not reach the age of 18 until May 28, 1999. Accordingly, she had until May 28, 2003, to bring suit against the Debtor based upon the prior loans that she made to the Debtor. However, because of the intervening bankruptcy petition filed by the Debtor on December 3, 2002, and the fact that the automatic stay has remained in effect since that filing date, the statute of limitations has yet to expire with regard to the collection of Wendy Melton's claim.[17] Therefore, the underlying obligation owed by the Debtor to Wendy Melton is still enforceable. Ms. Melton, however, on November 19, 2002, executed a Grant, Sale, Conveyance and Assignment of her entire interest in both the February 1988 agreement and the July 1, 1994, Divorce Decree, whereby she assigned 80% of her interest to Defendant Neely and the remaining 20% to Defendant Jackson.[18] Consequently, because the underlying obligation is still enforceable, the Court concludes that the Defendants possess valid equitable liens against

---

**17.** *See* 11 U.S.C. § 108(c) which states that:
Except as provided in section 524 of this title, if applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor..., and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

**18.** *See* Ex. E. to Plaintiff's Complaint.

the Debtor's homestead property based on the obligation owed to Wendy Melton.

The Debtor's Complaint in this adversary proceeding also challenges the Defendants' entitlement to interest and/or attorney's fees which the Defendants allege is secured by their equitable liens. The Divorce Court specifically found that as of the July 1, 1994, decree, Wendy Melton had advanced a total of approximately $23,800.00 of her child support payments to the Debtor and Mr. Chappell.[19] After the addition of pre-judgment interest at an average of 4.5% over 4.5 years, the divorce court found the total amount owed to Wendy Melton and secured by an equitable lien in her favor was $28,169.00. The Debtor, seizing upon the language in the Divorce Decree stating that the equitable lien is imposed in favor of Wendy Melton (and the other children) "in the stated sums," argues that the equitable lien does not extend to *any* future interest on the obligation or to any attorney's fees claimed by the Defendants, but is instead limited solely to the $28,169.00 amount stated in the decree. This contention is erroneous. The February 1988 agreement executed by and between Wendy Melton and the Debtor clearly states that the loan will accrue interest at the rate of 9% per annum until paid. Nowhere in the Divorce Decree does the family district court purport to alter this contractual provision, and the Court rejects the Debtor's argument that the phrase "in the stated sums" evidences an intent by the district court to terminate the accrual of interest in the future on the unpaid obligation.

Therefore, the Court concludes that the equitable lien imposed in favor of Wendy

Melton, and subsequently assigned to Defendants Neely and Jackson, secures not only the $28,169.00 obligation but also the accrued interest from the July 1, 1994, date of the Divorce Decree to the December 3, 2002, petition date. Adding the accrued interest, calculated at 9% per annum as reflected in the February 1988 agreement, to the $28,169.00 obligation gives a total principal and interest owed as of December 3, 2002, of $58,220.62.[20] However, as to the Defendants' assertion that their equitable lien also secures the payment of attorney's fees, a review of the summary judgment evidence establishes that the Defendants failed to provide sufficient evidence in support of their attorney's fee request. Thus, the Court will deny summary judgment on this issue at this time.

*Defendant Neely's Motion for Relief from Automatic Stay*

The Court also concludes that Defendant Neely's Motion for Relief from Stay should be denied. In his motion, Neely essentially seeks the termination of the stay for the purpose of proceeding with a state court partition suit based upon his alleged undivided real property interest arising from the resulting trust language in the Divorce Decree. Having concluded that the Divorce Decree actually imposed an equitable lien in favor of the children rather than a resulting trust, there is insufficient cause established to warrant the modification of the stay to allow the partition proceeding to be commenced.

■ As to the adequate protection of Neely's interests, Neely is correct that the Debtor's current Chapter 13 plan on file with the Court fails to take into account

---

**19.** *See* Defendants' Motion, Ex. A, p. 8.

**20.** The Court calculated the interest on the $28,169.00 obligation to the petition date using the interest provided in the February 1988

agreements, or 9%. In addition, the interest accrued at least from July 1, 1994, to the December 3, 2002, petition date, or 8 years and 155 days.

the equitable liens held by both Defendants, and it is apparent that the Debtor has not previously been providing any type of adequate protection payment to either Defendant. These facts alone, however, do not justify the modification of the stay. The Debtor has not paid any adequate protection payments to the Defendants because the Defendants' secured claims, herein quantified as of the petition date in the amount of $58,220.62, appear to be vastly oversecured and, thus, are protected by the equity cushion existing in their collateral.[21] Moreover, the Debtor's Chapter 13 plan does not currently provide for the Defendants' secured claims because the Debtor has been vigorously contesting the existence of such equitable liens in favor of the Defendants. Consequently, the Court concludes that there is no justification for granting any stay relief in favor of the Defendants at the present time. However, the Debtor shall obviously be compelled to file a new Chapter 13 plan which addresses the secured claims of these Defendants.

## Debtor's Motion to Avoid Judgment Liens

Finally, the Court recognizes that the Debtor filed her "Motion To Avoid Judgment Lien Allegedly Held By Johnny Neely, Trustee, and Gary Jackson, Pursuant to 11 U.S.C. § 522(f)" on May 30, 2003. Though this motion was intended to be carried to the date of trial of the complaint in this adversary proceeding, the Court concludes that a ruling in favor of the Defendants is warranted as a matter of law.

11 U.S.C. § 522(f)(1)[22] allows a debtor to avoid a lien on exempt property if that debtor can show that "(1) the lien is a judicial lien;[23] (2) the lien is fixed against an interest of the debtor in proper-

---

**21.** As evidenced by her Amended Schedule A, the Debtor's homestead property has a value of $342,400.00, subject to a mortgage in favor of Bank of America in the amount of $35,700.79, *see* Debtor's First Amended Chapter 13 Plan, as well as the two equitable liens in favor of the Defendants that total is $58,220.62.

**22.** Section 522(f)(1) states as follows:
Notwithstanding any waiver of exemptions, but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(A) a judicial lien, other than a judicial lien that secures a debt—
(i) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement; and
(ii) to the extent such debt—

(I) is not assigned to another entity, voluntarily, by operation of law, or otherwise; and
(II) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support. . . .

**23.** Although not raised as an issue in the current dispute, the Court notes for the record that the equitable lien awarded in the Divorce Decree clearly constitutes a "judicial lien" under 11 U.S.C. § 101(36), which defines the term "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." In fact, several courts have held that an equitable lien awarded by a divorce decree falls within the Bankruptcy Code definition set forth in § 101(36). *See, e.g., In re Levi,* 183 B.R. 468, 471–72 (Bankr.N.D.Tex.1995) ["The equitable lien in the present case was obtained through the divorce proceedings. Those proceedings were legal or equitable under any definition of those terms. As such, the lien in question is a judicial lien under the Bankruptcy Code definition."].

ty; (3) and the lien impairs an exemption to which the debtor would otherwise be entitled." *See In re Bensen,* 262 B.R. 371, 379 (Bankr.N.D.Tex.2001) *(citing Matter of Henderson,* 18 F.3d 1305 (5th Cir.1994) *and In re Inman,* 131 B.R. 789, 791 (Bankr.N.D.Tex.1991)). In determining whether the Debtor can utilize § 522(f) to avoid the equitable liens at issue in this case, the Court must consider whether the liens were fixed against the Debtor's interest in the property before or after the Debtor acquired that interest in the property. This is critical because § 522(f) only operates to avoid "the *fixing* of a lien on an interest of the debtor in property." 11 U.S.C. § 522(f)(1) (emphasis added).

In construing the language of 11 U.S.C. § 522(f), the United States Supreme Court has held that a judicial lien awarded in a divorce decree to a debtor's former wife could not be avoided under § 522(f), absent a showing that the debtor owned the interest in the property to which the lien fixed prior to the fixing of such lien. *See Farrey v. Sanderfoot,* 500 U.S. 291, 301, 111 S.Ct. 1825, 1831, 114 L.Ed.2d 337 (1991). In *Farrey,* as in our case, the divorce court was called upon to dispose of a *community property homestead.* The divorce court awarded the homestead to the debtor subject to an equitable lien in favor of his ex-wife to secure payment for her community interest in the homestead. *See id.* at 293, 111 S.Ct. at 1827. The debtor subsequently filed for bankruptcy and sought to avoid the lien awarded to his ex-wife under 11 U.S.C. § 522(f). The bankruptcy court denied the debtor's mo-

tion, holding that the lien could not be avoided because it protected the ex-wife's pre-existing interest in the marital property. *See In re Sanderfoot,* 83 B.R. 564 (Bankr.E.D.Wis.1988). The District Court reversed, concluding that the lien was avoidable because it "is fixed on an interest of the debtor in the property," *In re Sanderfoot,* 92 B.R. 802 (E.D.Wis.1988), and a divided panel of the Seventh Circuit affirmed. *See In re Sanderfoot,* 899 F.2d 598 (7th Cir.1990). The U.S. Supreme Court granted certiorari to resolve the conflict of authority, and subsequently reversed and remanded the Court of Appeals' judgment. *See Farrey v. Sanderfoot,* 500 U.S. at 295, 111 S.Ct. at 1828. Focusing on the statutory language of § 522(f), the Supreme Court held that " § 522(f)(1) of the Bankruptcy Code requires a debtor to have possessed an interest to which a lien attached, before it attached, to avoid the fixing of the lien on that interest." *Id.* at 301, 111 S.Ct. at 1831. This holding was premised upon the fact that under Wisconsin law, an award of community property by a divorce decree operates to transform the ex-spouses' respective community interests in the property into a single fee simple interest which vests solely in the acquiring spouse. Consequently, because the debtor acquired his fee simple interest in the property simultaneously with the "fixing" of the lien on the property, the debtor could not avoid the lien under § 522(f).[24]

In this case, similarly to the facts in the *Farrey v. Sanderfoot* decision, the Debtor and her ex-husband had a community

---

**24.** Since the *Farrey* decision, several courts have applied § 522(f)(1) to equitable liens created in a divorce proceeding under Texas law, including *In re Levi,* 183 B.R. 468, 471–72 (Bankr.N.D.Tex.1995). As stated by the *Levi* court:

In Texas, the divorce divests each spouse of his or her interest in community property and revests fee simple title in one spouse or

the other. *See In re Finch,* 130 B.R. 753, 756 (S.D.Tex.1991). An equitable lien on property which was previously community property, therefore, fixes at the same time the acquiring spouse's interest in the property is created. *Id.* A debtor cannot avoid those liens under § 522(f)(1)(A).

*183 B.R. at 472.*

property homestead during their marriage. The Divorce Decree thereafter divested each party of their community property interest and vested the Debtor at the time of the divorce with the fee simple title to the homestead property. At the time the Debtor acquired her fee simple title, the property was subject to the equitable liens granted in the Divorce Decree in favor of the three children. Consequently, because the Debtor acquired her fee simple interest in the property simultaneously with the "fixing" of the liens on the property, the Debtor cannot avoid the liens under § 522(f).[25]

*Conclusion*

Other than the Defendants' request for attorney fees, there are no undetermined factual issues in this dispute and, other than consideration of that limited fee issue, which will subsequently be handled by expedited means described below, it is proper to resolve this adversary proceeding by summary judgment. Based upon the foregoing, the Court concludes that partial summary judgment should be rendered in favor of the Defendants, Johnny M. Neely, Trustee, and Gary Jackson, to the extent that the equitable lien imposed by the Divorce Decree in favor of Wendy Kay Melton, which was thereafter assigned in percentage allocations to Defendants Neely and Jackson, remains in full force and effect as against the Debtor's homestead property, and that Defendant Neely thereby possessed, exclusive of any attorney's fee claim secured by the lien, a secured claim against this bankruptcy estate as of the petition date in the amount of $46,576.50. For the same reasons, Defendant Jackson thereby possessed, exclusive of any attorney's fee claim secured by the lien, a secured claim against this bankrupt-

cy estate as of the petition date in the amount of $11,644.12.

Conversely, it is also clear that the entry of a partial summary judgment in favor of the Plaintiff, Verna Kay Herman, is also appropriate, despite the fact that the Plaintiff filed no formal summary judgment motion. Federal courts are "empowered to enter summary judgment *sua sponte* so long as the losing party has ten days notice to come forward with all of its evidence in opposition to the motion." *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466 (5th Cir.2001) (*citing Geraghty and Miller, Inc. v. Conoco Inc.*, 234 F.3d 917, 923 (5th Cir.2001) and *Love v. National Medical Enterprises*, 230 F.3d 765, 770–71 (5th Cir.2000)). That standard has been met in this case since the Defendants have presented all relevant summary judgment evidence in support of their own summary judgment request and the Court has determined that, as a matter of law, summary judgment for the Plaintiff is appropriate to declare that the Defendants own no actual undivided interest in the Debtor's homestead property, and that the applicable statute of limitations bars any action by the Defendants to collect from the Plaintiff–Debtor the underlying indebtedness originally owing to Kenneth Jeff Brown, II and Natalie Sherie Brown and that, therefore, the equitable liens upon the Debtor's homestead granted under the Divorce Decree to secure those two claims are now invalid and unenforceable.

As to the Defendants' request for attorney's fees, the Court must deny summary judgment in their favor at this point based on the lack of summary judgment evidence submitted in support of their claim. However, in the interest of judicial economy,

---

**25.** Although the Debtor cannot utilize 11 U.S.C. § 522(f) to avoid any of the equitable liens against her homestead property, the Court reiterates that the equitable liens in favor of both Jeff Brown and Natalie Sherie Brown are unenforceable due to the expiration of the statute of limitations on the underlying obligations owed to them.

the Court will order that, if the Defendants desire to pursue their request for attorney's fees, the Defendants shall have a period of fifteen (15) days from the date of the entry of the orders accompanying this decision within which to submit to the Court such additional evidence and legal authority supporting the award of attorney's fees in this instance. Upon the submission of such support, the Debtor shall have an additional fifteen (15) days within which to file any objection to the award of attorney's fees. Upon the receipt of such documents, if any, the Court will proceed to rule on the attorney's fee issue, but if no such evidence is submitted by the Defendants, the attorney's fee claims shall be denied.

Finally, as to the related contested matters, the Court has concluded that Defendant Neely's Motion for Relief from Stay and the Debtor's Motion To Avoid Judgment Lien must each be denied for the reasons stated herein. Appropriate orders shall be entered as to each matter which are consistent with this opinion.