82 P.3d 830

Victor and Martin ASPIAZU,
Plaintiffs–Respondents,

v.

Jon and Shara MORTIMER, husband
and wife, Defendants–Appellants,

and

Commercial Ventures, Inc., dba Arthur
Berry & Co., Defendant.

No. 28840.

Supreme Court of Idaho,
Boise, November 2003, Term.

Dec. 23, 2003.

Ellis, Brown and Sheils, Chtd., Boise, for appellants. Stephen C. Brown argued.

Martelle Law Offices, PA, Boise, for respondent. Martin J. Martelle argued.

TROUT, Chief Justice.

Defendants Jon and Shara Mortimer (the Mortimers) appeal the district judge's decision in favor of Plaintiff Victor Aspiazu (Aspiazu). Aspiazu alleged the Mortimers defrauded him of $40,000 in the course of a business transaction to purchase a Boise restaurant. The Mortimers argue there was not substantial, competent evidence presented at trial supporting Aspiazu's claim of fraud. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In June 2000 the Mortimers agreed to purchase the Renaissance Restaurant in Boise from Aspiazu for the listed price of $375,000. Initially the Mortimers agreed to buy the property for the cash sum of $25,000 together with two installment notes of $175,000 each; one due at the end of July 2000 and the other due in July 2015. At the closing, the Mortimers paid the $25,000 and signed the installment notes.

When the Mortimers attempted to obtain an SBA loan to pay the first installment note, Key Bank—the financing institution—appraised the property and valued it at $40,000 less than the agreed upon purchase price. Key Bank informed the Mortimers it would loan them money for the entire purchase price, but only at the appraised value. The Mortimers and Aspiazu then agreed to amend the original contract to provide for one cash payout financed by Key Bank of $310,000, together with the $25,000 already paid in cash, for a total purchase price of $335,000. However, to compensate for the difference between this new amount and the previously agreed upon price of $375,000, the real estate agent working for Aspiazu, Arthur Berry, proposed that the Mortimers enter into a consulting agreement with Aspiazu valued at $40,000. That consulting agreement would assure that Aspiazu received the original purchase price outside of the loan process and would be payable in monthly payments with interest secured by the restaurant property. Both parties agree that Aspiazu would not have done any consulting as part of this agreement.

However, there was conflicting testimony at trial as to if and how fully this proposal was communicated to the Mortimers. Aspiazu contended at trial that his attorney, Dennis Charney, contacted the Mortimers by telephone and informed them of the consulting contract and that the Mortimers agreed to enter into this contract as a means of paying Aspiazu the $40,000 difference. The Mortimers argue they made no such agreement and, if anything, they only agreed to talk at some future point and work out the details later.

At the closing on the amended contract, the Mortimers signed the amended contract on the property for $335,000, but refused to sign the consulting contract. There is conflicting testimony as to whether the Mortimers communicated to Aspiazu during the closing that they acknowledged owing him $40,000 more and how they would pay him for it. Aspiazu asserts the Mortimers informed the escrow agent at the closing, Tina Bornton, that they knew they owed Aspiazu the $40,000 and they would arrange to pay this to him at some date after the closing. Aspiazu contends that Bornton then relayed this statement to him (he was in the lobby of the title building, not present at the closing itself) and in reliance on this statement, he agreed to sign the amended contract for $335,000 and allowed the closing to proceed. The Mortimers deny they ever made such a statement to Bornton and further argue that Bornton was not their agent and could not make such statements on their behalf to Aspiazu and legally bind them.

At trial, the district court found for Aspiazu, finding there was fraud in the inducement on the part of the Mortimers and awarded damages to Aspiazu in the amount of $40,000.

## II.

### STANDARD OF REVIEW

This Court will only set aside a trial court's findings of fact if they are clearly

erroneous. I.R.C.P. 52(a) (2002); *McCray v. Rosenkrance*, 135 Idaho 509, 513, 20 P.3d 693, 697 (2001); *In re Williamson v. City of McCall*, 135 Idaho 452, 454, 19 P.3d 766, 768 (2001). In deciding whether findings of fact are clearly erroneous, this Court determines whether the findings are supported by substantial, competent evidence. Evidence is substantial if a reasonable trier of fact would accept it and rely on it. *Id.* Findings based on substantial, competent evidence, although conflicting, will not be disturbed on appeal. *Bolger v. Lance*, 137 Idaho 792, 53 P.3d 1211 (2002).

*Neider v. Shaw*, 138 Idaho 503, 506, 65 P.3d 525, 528 (2003).

Here this Court is asked to look at the record and determine if the district judge's finding of fraud in the inducement on the part of the Mortimers is supported by substantial and competent evidence, even though the evidence presented at trial may have been conflicting or contested.

## III.

## FRAUD IN THE INDUCEMENT

■ The elements of actionable fraud or misrepresentation are as follows.

■ There must be evidence of:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.... *Faw v. Greenwood*, 101 Idaho 387, 389, 613 P.2d 1338, 1340 (1980).

Here, the Mortimers specifically contest the district judge's findings that: 1) they made representations to Aspiazu that they owed him $40,000 more than the contract price and would pay this to him outside of the closing, 2) such representations were material, and 3) Aspiazu had a right to rely on these representations.

### A. Representations by the Mortimers

Though their testimony was countered by evidence presented by the Mortimers, both Dennis Charney and Tina Bornton testified the Mortimers had represented to them that the Mortimers acknowledged owing Aspiazu $40,000 more than the amended contract price for the restaurant, and they would either sign the consulting agreement or pay this amount to Aspiazu in another form outside of the closing. The only evidence in conflict with the testimony of these two individuals was testimony offered by Jon Mortimer. Accordingly, the trial court was well within its authority in accepting the testimony of Charney and Bornton over that offered by Mortimer, and finding that the Mortimers had made such representations to Aspiazu through these individuals.

### B. The Materiality of These Representations

■ As to a claim of fraud, "[m]ateriality refers to the importance of the misrepresentation in determining the plaintiff's course of action." *Watts v. Krebs*, 131 Idaho 616, 619, 962 P.2d 387, 390 (1998). At trial, several witnesses, including Aspiazu, Charney, Berry, and Bornton, all testified that if the Mortimers had not acknowledged a debt of $40,000 and made representations that they were going to pay this debt, the deal for the restaurant would never have been completed. As such, these representations were clearly material to the deal and were intrinsically related to Aspiazu's decision to go through with the amended contract.

### C. Aspiazu's Right to Rely on the Representations

In their briefs and at oral argument, the Mortimers have challenged Aspiazu's right to rely on their representations to him, claiming that the deal was embodied in its entirety in the $335,000 amended contract, and Aspiazu's reliance on any other terms outside the contract was prohibited by the document itself. This argument, which is essentially a parol evidence rule argument, is contrary to established Idaho case law dealing with fraud in the inducement.

While normally the terms of a written contract will control, Idaho law firmly allows that "[f]raud in the inducement is always admissible to show that representations by one party were a material part of the bargain." *Thomas v. Campbell*, 107 Idaho 398, 402, 690 P.2d 333, 337 (1984). "[A]greements and communications prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish fraud." *Tusch Enterprises v. Coffin*, 113 Idaho 37, 45 n. 5, 740 P.2d 1022, 1030 n. 5 (1987), *Mikesell v. Newworld Development Corp.*, 122 Idaho 868, 876, 840 P.2d 1090, 1098 (Ct.App.1992). Fraud vitiates the specific terms of the agreement and can provide a basis for demonstrating that the parties agreed to something apart from or in addition to the written documents. To argue that Aspiazu is completely bound by the written agreement disregards the purpose of demonstrating fraud. We therefore find that Aspiazu had a right to rely on these representations made by the Mortimers.

## IV.

### CONCLUSION

There was substantial and competent evidence upon which the district judge could rely in finding that the Mortimers committed fraud in the inducement in representing to Aspiazu they would pay him the $40,000 difference between the original price for the restaurant and the amended contract, and then refusing to do so once the amended contract was signed by both parties. We find that these representations were material to the bargain and, despite the language of the contract itself, Aspiazu had a right to rely on these representations and did so to his detriment.

The district judge's decision is affirmed. We award costs on appeal to Respondents.

Justices SCHROEDER, KIDWELL, EISMANN and BURDICK, concur.