# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38454

| | | |
|---|---|---|
| MC CORMICK INTERNATIONAL USA, INC., a corporation, | ) ) ) | |
| Plaintiff, | ) ) | Boise, February 2012 Term |
| v. | ) ) | 2012 Opinion No. 69 |
| ROBERTA SHORE, an individual, | ) ) | Filed: April 26, 2012 |
| Defendant-Third Party Plaintiff-Respondent-Cross Appellant, | ) ) ) | Stephen Kenyon, Clerk |
| and | ) ) | |
| BEAR RIVER EQUIPMENT, INC., a corporation; WILLIAM R. SHORE, an individual, | ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| NICHOLAS BOKIDES, | ) ) | |
| Third Party Defendant-Appellant-Cross Respondent. | ) ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Franklin County. Hon. Mitchell W. Brown, District Judge.

The decision of the district court is affirmed.

Moffatt, Thomas, Barrett, Rock & Fields, Chartered, Idaho Falls, for appellant. Bradley J. Williams argued.

Ringert Law Chartered, Boise, for respondent. James Garrison Reid argued.

HORTON, Justice.

Roberta Shore (Roberta) retained attorney Nicholas Bokides (Bokides) to represent her in her divorce from William Shore (William). Pursuant to the divorce decree, William took all interest in the couple's business, Bear River Equipment, Inc. (Bear River), a farm equipment dealership. Roberta had instructed Bokides to provide notice to McCormick International USA, Inc. (McCormick), a Bear River creditor, that she would no longer personally guarantee its advances. Bokides never provided the notice, and McCormick sued Roberta to enforce the guarantee. Roberta brought a third party complaint against Bokides for malpractice. Bokides did not deny the malpractice claim, but alleged that Roberta failed to mitigate her damages because she did not seek to enforce the divorce decree's mandate that William hold her harmless from all Bear River debts. Bokides appeals the trial court's judgment in Roberta's favor. Roberta cross-appeals the district court's determination that her damages were limited to advances made after entry of the divorce decree. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Roberta retained Bokides in the spring of 2006 to represent her in the divorce from William, her husband of fifteen years. Incident to the divorce, Roberta intended to transfer to William all interest, assets, and liabilities related to Bear River. The previous spring, McCormick had required William and Roberta to each execute personal guarantees in order to obtain financing for Bear River. Sometime between March and May of 2006, Roberta instructed Bokides to notify McCormick that she would not personally guarantee future advances.[1] Roberta and Bokides did not discuss a specific time for Bokides to provide the notice and they did not discuss the subject again before the divorce decree was entered on November 16, 2006. The divorce decree transferred to William all assets related to Bear River and required that he defend and hold Roberta harmless with regard to all Bear River liabilities.

Until the time of the divorce, Bear River was profitable. Following the divorce, Bear River's financial fortunes took a turn for the worse, and on August 30, 2007, nearly ten months after the divorce became final, Roberta received notice from McCormick that Bear River had failed to meet its financial obligations with regard to eight pieces of financed farm equipment. McCormick informed Roberta that it intended to enforce her personal guarantee as to these

---

[1] Roberta's guaranty provided that it would be "a continuing guaranty, and shall cover all the liabilities which the Dealer may incur or come under until" such time as the lender "shall have received at its Head Office, written notice from the Guarantor or the executor, administrators, successors or assigns of the Guarantor, to make no further advances on the security of this guaranty."

liabilities. When Roberta contacted Bokides, she first learned that he had failed to notify McCormick that she would no longer guarantee Bear River's obligations. On August 29, 2008, McCormick sued Bear River, William, and Roberta. On August 12, 2010, judgment was entered jointly and severally against each of the three.

Meanwhile, Roberta had joined Bokides as a third-party defendant, asserting legal malpractice. Bokides admitted that he had breached his professional duties to Roberta, but asserted, as an affirmative defense, that Roberta had failed to mitigate her damages. He claimed that Roberta had a duty to enforce the divorce decree by requiring William to defend and indemnify her as to all Bear River debts. Bokides alleged that Roberta's failure to do so relieved Bokides of liability for most or all of the damages resulting from his malpractice. On August 24, 2010, Roberta's malpractice claim was tried to the court without a jury. Roberta testified that because she had been married to William for fifteen years, had acted as the couple's bookkeeper, and was only recently divorced from him, she was aware that he had very few assets and was faced with significant liabilities. William testified and submitted evidence representing that the value of his assets was too little to reach a settlement with McCormick, let alone satisfy the full extent of McCormick's claims.

The court found that Roberta had reasonably believed that William was judgment proof and thus had acted reasonably by declining to pursue litigation against William to enforce the divorce decree because it would have ultimately proved to be fruitless. The court also found that a reasonable time for Bokides to give notice to McCormick that Roberta would no longer guarantee Bear River's obligations was no later than the time of the entry of the divorce decree. Thus, the trial court found that Bokides was not liable for damages due to McCormick's enforcement of Roberta's guaranty as to one tractor that was financed before the decree was entered. The court entered judgment in favor of Roberta against Bokides for $299,085.53, reflecting the full extent of McCormick's judgment against Roberta, less the value of the tractor.

Bokides appeals the court's finding that Roberta had not failed to mitigate her damages and the amount of damages that were awarded to Roberta. Roberta cross-appeals the court's failure to award her damages compensating her for her liability to McCormick for the tractor that was financed before her divorce. Both parties seek attorney fees on appeal.

## II. STANDARD OF REVIEW

This Court will not set aside a trial court's findings of fact unless those findings are clearly erroneous. I.R.C.P. 52(a). Where the trial court acted as factfinder below, we grant due regard to its special opportunity to assess witness credibility. *Id.* Factual findings are not clearly erroneous if they are supported by substantial and competent, although conflicting, evidence. *Aspiazu v. Mortimer*, 139 Idaho 548, 550, 82 P.3d 830, 832 (2003). "Evidence is substantial if a reasonable trier of fact would accept it and rely on it." *Id.* This Court reviews a trial court's conclusions of law de novo. *Shore v. Peterson*, 146 Idaho 903, 907, 204 P.3d 1114, 1118 (2009).

## III. ANALYSIS

**A. The district court's findings of fact are supported by substantial and competent evidence.**

 1. <u>Substantial, competent evidence supports the court's finding that Roberta acted reasonably when she did not sue William.</u>

Bokides contends that Roberta cannot recover damages from him because she made no attempt to enforce the divorce decree's mandate that William indemnify her for obligations related to Bear River. The district court held that "Bokides did not present sufficient evidence at trial that Roberta's pursuit of William could have led to a collectible judgment that would have satisfied or decreased her liability to McCormick." We hold that the court's findings are supported by substantial and competent evidence.

The doctrine of avoidable consequences, or the duty to mitigate, is an affirmative defense that provides for a reduction in damages where a defendant proves that it would have been reasonable for the plaintiff to take steps to avoid the full extent of the damages caused by the defendant's actionable conduct. *Davis v. First Interstate Bank of Idaho, N.A.*, 115 Idaho 169, 170, 765 P.2d 680, 681 (1988). Where an injured party takes steps to mitigate the damages caused by another, she is entitled to the costs she reasonably incurs in avoiding those damages. *Casey v. Nampa & Meridian Irr. Dist.*, 85 Idaho 299, 305, 379 P.2d 409, 412 (1963) (citing *Christensen v. Gorton*, 36 Idaho 436, 211 P. 446 (1922); 15 Am.Jur. Damages § 27; 25 C.J.S. Damages § 35). The doctrine of avoidable consequences seeks to "discourage even persons against whom wrongs have been committed from passively suffering economic loss which could be averted by reasonable efforts . . . ." *Indus. Leasing Corp. v. Thomason*, 96 Idaho 574, 577, 532 P.2d 916, 919 (1974) (quoting *Wright v. Baumann*, 398 P.2d 119, 121 (Or. 1965)). Whether

it is reasonable to expect a plaintiff to perform specific acts of mitigation is a question of fact. *Casey*, 85 Idaho at 307, 379 P.2d at 413.

The defendant bears the burden of proving that the proposed means of mitigation were reasonable under the circumstances, could be accomplished at a reasonable cost, and were within the plaintiff's ability. *Id.* Proof of the latter of these three requires more than a mere suggestion that a means of mitigation exists. *Clark v. Int'l Harvester Co.*, 99 Idaho 326, 347, 581 P.2d 784, 805 (1978). Thus, where a plaintiff-farmer sought damages in the form of lost profits related to a tractor that did not perform as anticipated, this Court concluded that although the plaintiff could have rented a substitute tractor, the defendant was not entitled to a reduction in damages because the defendant had failed to demonstrate any mitigating effects would have flowed from such a rental. *Id.* Similarly, where a defendant refused to rescind a contract for the sale of a broodmare which, subsequent to the sale, was found to be infertile, the Court of Appeals held that the defendant's mere assertion that plaintiffs could have engaged veterinary services to assess the mare's fertility was insufficient. *Whitehouse v. Lange*, 128 Idaho 129, 136, 910 P.2d 801, 808 (Ct. App. 1996). Since the defendant in that case did not present evidence that such conduct would have resulted in a cure, or that the retention of such services would be cost effective, its mitigation defense failed. *Id.* Thus, when advancing a claim that the plaintiff failed to mitigate damages, the defendant must prove both that a means of mitigation existed and that the proposed course of mitigation would, in fact, have resulted in a reduction of the plaintiff's damages.

The adage that one cannot get blood from a turnip is applicable to this appeal. The fact that Roberta had a legal right to obtain indemnification from William does not lead inexorably to the conclusion that he possessed the ability to provide such indemnification. Application of the applicable standard of review requires us to determine whether the evidence at trial was such that a reasonable factfinder could only find that, had Roberta taken legal action against William, she would have been able to avoid the damages she suffered as the result of Bokides' negligence.[2] This Court is constrained to affirm the findings of the district court if a reasonable person could find that William was indeed judgment proof or that any recovery from William would have been offset by the costs of pursuing litigation against him.

---

[2] Bokides suggests that Roberta's inaction represented an effort to protect William. However, Roberta testified that before judgment was entered against her, she believed that her interests were protected because William was engaged in settlement negotiations with McCormick.

William's financial statement as of February 26, 2010, was admitted into evidence. That statement reflected his net worth on that date as being $230,920, consisting of assets assigned a market value of $2,165,200 and $1,934,280 in liabilities. Bokides asserts that William's financial statement understated the value of his assets and overstated his liabilities. However, William testified that the financial statement included some of Bear Rivers' federal tax liabilities because the IRS had initiated proceedings to hold him personally liable for Bear River debts. William also testified that he was personally liable for Bear River's state income and sales tax obligations. William explained that the state tax liabilities listed on his financial statement did not accurately match other documents in the record because those documents only addressed four of the six quarters during which the taxes went unpaid. Roberta testified that, although William's financial statement presented the value of one piece of real property as being $1,625,000, a 2010 offer for the property was only for $900,000. Both Roberta and William testified that if Roberta had pursued legal action against William, resulting in a forced sale of his assets, the proceeds from such a sale would have been substantially less than the market values assigned in the statement. Finally, had Roberta sued William, she would have incurred attorney fees and costs.

Although the record contains conflicting evidence as to William's net worth, the extensive liabilities William faced, the probability of reduced proceeds that would be garnered from a forced sale of William's assets, and the costs of required litigation represent substantial and competent evidence to support the district court's finding that Roberta acted reasonably in not pursuing legal action against William to enforce the divorce decree.

Bokides asserts that Roberta's attorney had a conflict of interest because he also represented William in the McCormick litigation. The pivotal factual question is whether Roberta could have actually obtained relief if she had enforced the divorce decree against William. Since substantial and competent evidence supports the district court's finding that there was no such possibility, whether Roberta and William could ethically be represented by the same attorney with regard to the McCormick lawsuit is irrelevant. We therefore decline to address that issue.

2. Substantial, competent evidence supports the court's finding that a reasonable time for Bokides' performance extended from Roberta's request until entry of the divorce decree.

6

Roberta cross-appeals the district court's finding that a reasonable time for Bokides to notify McCormick that she would no longer guarantee Bear River's obligations was November 16, 2006, the date the Shores' divorce became final. She contends that because Bear River continued to engage in business that potentially subjected her to liability during the pendency of the divorce proceedings, a reasonable time for Bokides' performance was no more than five months after she informed him of her request. Thus, she asserts that she is entitled to damages for her obligation under her guaranty for the tractor that McCormick financed prior to the entry of the divorce decree.

Where parties to a contract do not expressly identify the time for its performance, "the law implies that it shall be performed within a reasonable time as determined by the subject matter of the contract, the situation of the parties, and the circumstances attending the performance." *Curzon v. Wells Cargo, Inc.*, 86 Idaho 38, 43, 382 P.2d 906, 908 (1963) (citing *Williams v. Idaho Potato Starch Co.*, 73 Idaho 13, 21, 245 P.2d 1045, 1049 (1952)). The trial court found that a reasonable time for Bokides' performance was the date the Shores' divorce was complete. The district court reasoned:

> . . . it was reasonable for Bokides to conclude that [Roberta's request that he provide notice to McCormick] was part of the overall dissolution of the marital relationship. The documents regarding the guarantee and Bear River were delivered to him at the same time. Roberta's stated objective in the divorce, in part, was that William receive Bear River and the assets and liabilities associated with that business. The Court concludes that it was consistent with those goals that as part of the dissolution of the marital relationship, that business be transferred to William along with the obligations and liabilities associated with the same. It also seems logical for Bokides to conclude that as part of his responsibilities of transitioning the business and its assets and liabilities to William that he would need to send the letters terminating Roberta's guarantees to . . . McCormick as part of the dissolution process.

Substantial and competent evidence supports the trial court's findings. Both Roberta and Bokides testified that Roberta made her request to Bokides sometime between March and May of 2006, along with other divorce-related requests. Roberta testified that her goals related to the divorce were "to get [her]self out of Bear River Equipment, . . . " and "remove [her]self from any liabilities, including the guarantees . . . ." Roberta also testified that "Uhm, in my mind, I just thought he would do it as soon as he got time. There was no reason to hold off on it. Uhm, I didn't see why it shouldn't have been done right away, but we didn't discuss it." Under cross-

7

examination regarding when Bokides should have notified McCormick, she indicated that she "figured it would be done by the end of the divorce, November of '06," if not earlier.

Bokides testified that Roberta had informed him that Bear River was doing well, and that he therefore thought it to her benefit to remain attached to the business until the divorce was final. Roberta testified that at the time of the divorce, Bear River was a successful business and there was no reason to be concerned about the business's liabilities. Considering that only six to eight months passed between Roberta's request and entry of the divorce decree, the parties' agreement that the business was doing well even at the time of the divorce, and Roberta's request was made along with many other requests related to the divorce, we hold that the findings of the district court were supported by substantial, competent evidence.[3]

3. Substantial, competent evidence supports the district court's valuation of Roberta's damages.

Bokides contends that the district court erred by awarding Roberta $299,085.59 because McCormick may never enforce the judgment against her.[4] However, as the tortfeasor whose negligence subjected Roberta to liability, Bokides is liable for the full amount of the damages proximately caused by his negligence. As we discussed above, substantial and competent evidence in the record supports the district court's finding that Roberta reasonably concluded that William was judgment proof and that it would therefore be futile to enforce the divorce decree against him. An implicit corollary of that finding is the finding that McCormick could not successfully seek compensation from William. Thus substantial, competent evidence supports the district court's determination of the extent of Roberta's damages.

**B. Neither party is entitled to attorney fees or costs on appeal.**

Bokides seeks attorney fees on appeal pursuant to I.C. §§ 12-120(3) and 12-121. Roberta also seeks attorney fees pursuant to I.C. § 12-120(3), which states that where a civil action involves a commercial transaction, the prevailing party is entitled to an award of attorney fees.

A commercial transaction is any transaction that is not for personal or household purposes. I.C. § 12-120(3). This Court recently held that "[t]he commercial transaction ground

---

[3] Although not evidence and not expressly relied upon by the district court, we note that Roberta's third-party complaint identified November 16, 2006 as the date by which she expected Bokides to notify McCormick of the termination of her guaranty.

[4] Bokides supports this assertion with citation to *Chicoine v. Bignall*, 122 Idaho 482, 835 P.2d 1293 (1992). However, *Chicoine* simply explores the contours of the "some damage" rule which helps courts identify the time at which a cause of action for legal malpractice accrues, initiating the running of the statute of limitations. *Chicoine* is therefore irrelevant. 122 Idaho at 483, 835 P.2d at 1294.

8

in I.C. § 12–120(3) neither prohibits a fee award for a commercial transaction that involves tortious conduct, nor does it require that there be a contract." *City of McCall v. Buxton*, 146 Idaho 656, 665, 201 P.3d 629, 638 (2009); *see also Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 728, 152 P.3d 594, 599 (2007). Where a commercial transaction comprises the gravamen of an attorney malpractice suit and is the basis for that suit, the prevailing party may be entitled to an award of attorney fees. *Id.* at 664-65, 201 P.3d at 637-38; *Brooks v. Gigray Ranches, Inc.*, 128 Idaho 72, 78, 910 P.2d 744, 750 (1996). It is difficult to fathom a more intensely personal transaction than hiring an attorney to negotiate the end of a marriage. This was not a commercial transaction.

As Bokides failed to prevail in his appeal and Roberta failed to prevail in her cross-appeal, there is no prevailing party in this appeal. Thus we decline to award attorney fees or costs to either party.

## IV. CONCLUSION

We affirm the findings of the district court. No attorney fees or costs are awarded on appeal.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.