**IN RE: David T. DAVIS and Ronda K. Davis, Debtors.**

**Bankruptcy Case No. 13–41551–JDP**

United States Bankruptcy Court,
D. Idaho.

Signed August 4, 2016

R. Sam Hopkins, chapter 7 Trustee, Pocatello, Idaho.

Dale T. Davis, Pocatello, Idaho, pro se, Creditor.

## MEMORANDUM OF DECISION

Honorable Jim D. Pappas, United States Bankruptcy Judge

### *Introduction*

Chapter 7[1] trustee R. Sam Hopkins ("Trustee") objected to allowance of the

---

1. Unless otherwise indicated, all chapter and    section references are to the Bankruptcy

claim of creditor Dale T. Davis ("Creditor") in this bankruptcy case. Dkt. No. 99. Creditor responded to Trustee's objection. Dkt. No. 104. On June 15, 2016, the Court conducted a hearing concerning the matter and took the issues under advisement. Dkt. No. 128. The parties filed post-hearing briefs. Dkt. Nos. 131, 132. Upon consideration of the record, briefs, and applicable law, this Memorandum constitutes the Court's findings of fact and conclusions of law, and sets forth the reasons for its decision. Rules 7052; 9014.

### Facts

David T. Davis and Ronda K. Davis ("Debtors") are the sole owners of a company they called DH Microsystems ("DHM"), a business that manufactures components, mostly for boats. For several years, they both drew salaries from DHM. However, when the business's cash flow was insufficient, they sought financial assistance from Creditor, David's[2] father.

Beginning in 2005, Creditor made several loans to DHM via Debtors, which they used to pay down the business's debt and as operating funds. These loans are outlined below.

On October 28, 2005, Creditor loaned DHM $15,000, interest free, to be repaid in installments of $500 beginning October 1, 2006. Proof of Claim No. 20, Dkt. No. 109. The agreement memorializing the loan contained the following provision: "If DH MicroSystems, Inc. encounters favorable business conditions early in 2006, and no unexpected additional tooling is required, the $500.00 monthly payments will begin as soon as practical but no later than October 15, as stated above." *Id.* This loan was never repaid.

On July 3, 2007, Creditor loaned DHM $30,000, with interest, as evidenced in the record by Creditor's cancelled check. No agreement concerning the terms of repayment for this loan was supplied to the Court. According to Creditor, DHM made only one payment of $724.72 on this loan.

Finally, in July 2008, Creditor agreed to factor some of DHM's customer accounts receivable. Again, if they existed, the precise terms of the parties' factoring agreement were not submitted in evidence, other than Creditor's representation that he was to receive ten percent on the invoices he purchased. Creditor purchased invoices and provided a total of $32,494.22 to DHM under this factoring arrangement. He received payments of $6,133.33 on December 28, 2007, and $585.67 on February 19, 2008, for a total of $6,719.

In sum, Creditor loaned $77,494.22 to DHM between October 2005 and July 2008, and received only $7,443.72 in payments on those loans. While Creditor regularly "reminded" Debtors about their outstanding debts to him, because they were members of his family he took no legal action against them or DHM to collect the loans.

On December 16, 2013, Debtors filed a chapter 13 bankruptcy petition. Dkt. No. 1. The bankruptcy case was converted to a chapter 7 case on Debtors' motion on August 11, 2015. Dkt. No. 61. In their schedules, Debtors listed their ownership interest in DH Microsystems which they valued at "$0.00". Schedule B, Dkt. No. 1. On Schedule F, Debtors list a debt owed to Creditor as a "Line of Credit" with a balance of $75,000. Dkt. No. 1.

Code, 11 U.S.C. §§ 101–1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

2. For clarity, the Court will sometimes refer to individuals by their first names. No disrespect is intended.

On August 31, 2015, Creditor filed a proof of claim in Debtors' case. Claims Reg. No. 20; Dkt. No. 109. It alleges that Debtors owe him $70,050.50 for "money loaned." *Id.* Trustee objected to allowance of Creditor's claim arguing that the loans made by Creditor are debts of DHM, not Debtors individually, and alternatively, even if the loans are Debtors' obligations, Creditor's claim is unenforceable under Idaho's statutes of limitation. Dkt. No. 99.

### Analysis and Disposition

Under Rule 3001(f), a filed proof of claim "constitutes *prima facie* evidence of the validity and amount of the claim" which, via § 502(a), is deemed allowed unless a party in interest objects. *Lundell v. Anchor Constr. Specialists, Inc.,* 223 F.3d 1035, 1039 (9th Cir.2000); *In re Morrow,* 03.2 IBCR 100, 101, 2003 WL 25273857 (Bankr.D.Idaho 2003). If an objection to a proof of claim is made, the Code instructs the Court to conduct a hearing, to determine the amount of the claim, and to allow the claim, except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]" § 502(b)(1).

■ The *prima facie* validity of the proof of claim afforded to a creditor by Rule 3001(f) does not allocate the burden of proof concerning the validity of the debt; it merely operates as a rebuttable evidentiary presumption in favor of the creditor. In other words, while the Rule satisfies the creditor's "burden of going forward" in support of its claim, *In re Garvida,* 347 B.R. 697, 706 (9th Cir. BAP 2006), the applicable "burden of proof is an essential element of the claim itself [and] one who asserts a claim is entitled to the burden of proof that normally comes with it." *Raleigh v. Illinois Dept. of Revenue,*

530 U.S. 15, 20–21, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

■ In this case, the applicable law defining Creditor's burden of proof for his claim under § 502(b)(1) is Idaho law. *In re Morrow,* 03.2 IBCR at 101 (citing *In re West One Mineral, Inc.,* 96.1 IBCR 12, 13 (Bankr.D.Idaho 1996)). As noted above, Trustee objects to allowance of Creditor's claim because he contends the loans Creditor made to Debtors are no longer enforceable under applicable statutes of limitation. While Creditor's claim enjoys *prima facie* validity under the Rules, given Trustee's objection, Creditor must ultimately prove that the loans constitute debt of Debtors individually, as opposed to being the debts of their corporation, DHM. *In re Gray,* 522 B.R. 619, 625 (Bankr.D.Idaho 2014) (under § 502(b)(1), following Trustee's rebuttal of the prima facie presumption, "the ultimate burden of persuasion remains on the [creditor] to demonstrate by preponderance of the evidence that the claim deserves to share in the distribution of the debtor's assets."); *see also, In re Parrott Broadcasting Ltd. P'ship,* 492 B.R. 35, 38 (Bankr.D.Idaho 2013); *In re Schweizer,* 354 B.R. 272, 279–80 (Bankr.D.Idaho 2006). On the other hand, the statute of limitations is an affirmative defense, and the party asserting it bears the burden of proof. *Mason v. Tucker and Assocs.,* 125 Idaho 429, 871 P.2d 846, 854 (Idaho App. 1994) (citing *Hawley v. Green,* 117 Idaho 498, 788 P.2d 1321, 1327 (1990)). Therefore, here, assuming the loans are Debtors' debts, Trustee bears the burden of proving that the Idaho statutes of limitation apply to bar enforcement those debts against Debtors.

Applying these rules, the Court will consider each of the loans made by Creditor in turn.

### A. The 2005 Loan

This loan was made on October 28, 2005. Attached to Creditor's proof of claim is a written agreement memorializing this loan signed by Debtors individually, and a check for the loan proceeds made payable to DMH.

Even assuming this loan is Debtors' personal obligation, and not the debt of DMH, Trustee contends the 2005 loan can not be enforced against Debtors under Idaho's statute of limitations, Idaho Code § 5–216, which requires that an action "upon a contract, obligation or liability founded upon an instrument in writing" be commenced within five years.

■ Trustee is partly correct; most of the loan balance is unenforceable. Creditor acknowledges that the loan was to be repaid in monthly installments beginning in October 2006, and that no payments were ever made. This was not disputed by Trustee, nor is there any evidence in the record to the contrary. Absent an acceleration clause in the parties' agreement,[3] in Idaho, "[w]here money is payable in installments, the statute of limitations begins to run against a cause of action for the recovery of a delinquent installment as of the time it becomes due." *Horkley v. Horkley*, 144 Idaho 879, 173 P.3d 1138, 1139 (2007) (citing *H.M. Chase Corp. v. Idaho Potato Processors, Inc.*, 96 Idaho 398, 529 P.2d 1270, 1274 (1974)).

For this loan, the date that the first installment payment became due was October 15, 2006. Given that the loan was for $15,000 and was interest free, and the installment payments were to be $500 each, presumably the parties intended that 30 monthly installment payments would be made. Therefore, the last installment payment was due on approximately April 15, 2009. And because no payments were made on this loan, all of the installments were delinquent no later than May 15, 2009. Based upon the Court's calculations, then, and applying the Idaho statute of limitations, Creditor could still enforce payment of some of the delinquent installments on this loan as of the date of Debtors' bankruptcy filing. More precisely, it appears the installments that became due on the 2005 loan in November and December of 2008 (and thus became delinquent in December and January of 2009), as well as installments due in January through April, 2009 (and thus delinquent in February through May, 2009) would not be barred by the Idaho statute of limitations as of the December 16, 2013 bankruptcy petition date. In other words, Creditor may seek to collect $3,000 of the 2005 loan balance via his proof of claim.

■ Of course, even if not barred by the statute of limitations, Trustee contends that the 2005 loan was made by Creditor to DHM, a corporation, rather than to Debtors individually, and as such, the loan can not support a valid claim in Debtors' bankruptcy case. The Court agrees.

The Code defines "debt" as "liability on a claim." § 101(12). In turn, "claim" is defined as "right to payment, whether or not such right is reduced to judgment, ...." § 101(5)(A). As noted above, § 502(b) provides that, following an objection, a proof of claim is to be allowed "except to the extent that ... such claim is unenforceable against the debtor and

---

**3.** Where a loan contract contains a clause accelerating the full balance due upon the debtor's default, the Idaho statute of limitations commences to run from the date of that default unless the acceleration clause is elective, in which case, the statute of limitations does not run as to the entire indebtedness unless the lender makes an affirmative election. *See Union Central Life Ins. Co. v. Keith*, 58 Idaho 471, 74 P.2d 699, 700 (1937).

property of the debtor."; *see also In re Hoffman,* 538 B.R. 57, 62 (Bankr.D.Idaho 2015); *In re Parrott Broadcasting Ltd. P'ship,* 492 B.R. 35, 40 (Bankr.D.Idaho 2013) (it is "well-established that a claim can not be allowed if it is unenforceable under nonbankruptcy law" therefore because "Debtor is not directly liable for the unpaid rent to [creditor].... Trustee's objection to [creditor's] [proof of claim] on this basis is well-taken.").

After considering the evidence presented here, the Court is persuaded that Trustee is correct, and that Creditor made the loan to DHM rather than to Debtors personally. The parties' agreement recites that the money was borrowed from Creditor "to help fund the expansion of their electronic manufacturing company, DH MicroSystems, Inc." Proof of Claim No. 20, Dkt. No. 109. That agreement further provides that if "DH MicroSystems, Inc. encounters favorable business conditions early in 2006, and no unexpected additional tooling is required" then the monthly payments would begin as soon as practical. *Id.* Even so, both Debtors signed the loan agreement, apparently in their individual capacities, as there is no indication that they signed as agents for DHM.

Given this evidence, the Court finds the agreement to be equivocal and ambiguous. Even though the writing indicates that Debtors borrowed the money, it clearly was loaned with the intent that it fund company expansion, and the loan's payback was tied directly to DHM's performance. Moreover, it seems clear that the loaned funds were never intended to belong to Debtors personally. And importantly, the check from Creditor to fund the loan was made payable to DH MicroSystems; Debtors' names do not appear anywhere on it.

At the hearing, Creditor acknowledged that the loan funds were intended to be used by DHM to pay its debt and as operating funds to continue the business. Of course, some of those operating funds included paying Debtors' salaries, and as such, some of Creditor's loaned funds likely went into Debtors' pockets. However, and this is the key point, it appears Creditor understood that the loaned funds would not go directly into Debtors' personal accounts, but arrived there, if at all, via their paychecks from DHM. Therefore, even though Creditor assumed that Debtors were personally liable for loan payments, the evidence before the Court does not support such a finding.

Accordingly, even assuming $3,000 of the balance due on the 2005 loan could be collected despite the statute of limitations, the Court is not persuaded that this loan was made by Creditor to Debtors personally. Rather, the 2005 loan was made to DHM, Debtors' company. Because the loan is not a "debt" enforceable under applicable law against Debtors, Trustee's objection to Creditor's claim for this loan will be sustained.

### B. The 2007 Loan

This loan was made on July 3, 2007. The Court was provided a handwritten summary of the terms of this loan authored by Creditor. If there was an actual agreement memorializing this loan, it is not before the Court. Lacking such proof, the Court must assume the loan was oral, and is therefore subject to a Idaho's four year statute of limitations, found in Idaho Code § 5–217.[4]

---

4. Idaho Code § 5–217 provides: "**Action on oral contract.**—Within four (4) years: An action upon a contract, obligation or liability not founded upon an instrument of writing." (emphasis in original).

Unfortunately, Creditor's summary attached to the proof of claim indicates what the interest rate is, but there is no evidence regarding the loan's repayment terms. The summary indicates only that a single payment for $724.72 was made. Thus, there is no way of knowing when the agreement was to be repaid, or when it fell into default.

There are two schools of thought regarding application of the statute of limitations to a promise to repay money which fails to include a date for repayment. Under the majority approach, "courts view the loan as repayable on demand and, because payment could be requested at any time, the action for repayment accrues immediately." *See, e.g., In re Herman,* 315 B.R. 381, 391–92 (Bankr.E.D.Texas 2004) (citing *Maddox v. City of Fort Smith,* 346 Ark. 209, 56 S.W.3d 375, 382 (2001); *Vanice v. Oehm,* 247 Neb. 298, 526 N.W.2d 648, 653 (1995); *Richardson v. Schaub,* 796 P.2d 1304, 1310 (Wyo.1990); *Akre v. Washburn,* 92 N.M. 487, 590 P.2d 635, 637 (1979)). A minority of courts follow general contract law, and supplement incomplete contracts with "reasonable" terms. *In re Herman,* 315 B.R. at 392. Under this approach, the courts imply a promise to repay the loan after a "reasonable time", and the statute of limitations begins to run at a reasonable time after the loan was made. *See, e.g., Lightle v. Harcourt Mgmt. Co., Inc.,* 634 N.E.2d 858, 861 (Ind.Ct.App.1994); *Stromblad v. Wilderness Adventurer, Inc.,* 577 P.2d 918, 921 (Okla.App.1978).

Idaho apparently follows the minority rule. "[W]hen parties to a contract have not agreed to a term essential to determine their rights and duties, the court supplies a term reasonable in the circumstances." *Hull v. Giesler,* 156 Idaho 765, 331 P.3d 507, 520 (2014) (citing Restatement (Second) of Contracts § 204 (1981)). "Where no time is expressed in a contract for its performance, the law implies that it shall be performed within a reasonable time as determined by the subject matter of the contract, the situation of the parties, and the circumstances attending the performance." *Id.* at 520 (citing *Weinstein v. Prudential Prop. & Cas. Inc. Co.,* 149 Idaho 299, 233 P.3d 1221, 1240 (2010)); *Star Phoenix Min. Co. v. Hecla Min. Co.,* 130 Idaho 223, 939 P.2d 542, 550 (1997) (citing *Davis v. Prof. Bus. Servs.,* 109 Idaho 810, 712 P.2d 511, 514–15 (1985)). This rule has been applied to oral contracts by Idaho courts. *McCormick Intl. USA, Inc. v. Shore,* 152 Idaho 920, 277 P.3d 367, 372 (2012); *Barnes v. Huck,* 97 Idaho 173, 540 P.2d 1352, 1357 (1975); *Curzon v. Wells Cargo, Inc.,* 86 Idaho 38, 382 P.2d 906, 43 (1963). Accordingly, in this case, because there is no evidence of a due date for the 2007 loan, the Court will imply that the loan was to be repaid after a reasonable term.

Here, the Court knows the amount of the 2007 loan, $30,000, and that a single payment was made to Creditor of $724.72. From these facts, the Court deems it reasonable to infer that the loan was to be repaid in monthly installments. Of course, it is unclear exactly what interest rate attached to this loan, as Creditor's proof of claim indicates only that it was to be 2 points less than bank rates. Assuming the monthly installments were to be $724.72 each, it would take more than 41 months to pay off the loan. Therefore, if the payment on the loan was made in August 2007, the first month following the July loan, the loan would not be paid off until January, 2011. Since the applicable statute of limitations allowed four years to enforce the 2007 loan, again, some of the monthly payments would still be actionable by Creditor as of the December 2013 bankruptcy petition date. Thus, as with

the prior loan, the statute of limitations would not act as a complete bar to Creditor's proof of claim as to this loan.

However, just as with the 2005 loan, Creditor also faces a problem: the identity of the borrower on the 2007 loan. In this instance, the evidence is even more compelling that the 2007 loan was a corporate loan, and not Debtors' individual debt. The loan funds were provided via a check from Creditor made out to "DH MICRO SYSTEMS," and there is no written agreement or any other evidence that even hints that it was Debtors who borrowed the money. As a result, the Court once again is persuaded that the 2007 loan was not made by Creditor to Debtors personally, thus rendering it unenforceable against Debtors' bankruptcy estate. Therefore, Trustee's objection to Creditor's claim for the 2007 loan will be sustained.

## C. The Factoring Loans

▇▇▇ Factoring is ... the sale of accounts receivable of a firm to a factor at a discounted price. In return for selling the accounts receivable at a discounted price, the seller receives two immediate advantages: (1) immediate access to cash; and (2) the factor assumes the risk of loss.... Factoring can be accomplished either by an actual sale of accounts or through their assignment.

*In re Straightline Invs., Inc.*, 525 F.3d 870, 876 n. 1 (9th Cir.2008) (internal citations omitted); *Boulder Fruit Exp. & Heger Organic Farm Sales v. Transp. Factoring, Inc.*, 251 F.3d 1268, 1271 (9th Cir.2001) (citing BLACK'S LAW DICTIONARY (7th ed.1999)) (factoring is the commercial practice of converting receivables into cash by selling them at a discount.).

As with the 2007 loan, the Court was given no evidence or information regarding the precise terms of Creditor's agreement to purchase DHM's accounts receivable, aside from the amounts he paid to DHM, and the dates on which Creditor made those payments. Using this scant record, the Court can not be sure about whether Creditor was entitled to seek payment of a factored invoice directly from the account debtor, or whether DHM would collect payment and remit sums on that account to Creditor. More importantly, on this evidentiary record, the Court can not determine whether the agreement was recourse or non-recourse, which would determine whether Creditor was limited to seeking payment from the customer, or whether Creditor could have recourse back against DHM or Debtors for any unpaid invoices. In short, given Creditor's sparse showing, the Court is unable to find that Debtors are personally obligated to Creditor under the factoring arrangement. As a result, Creditor has not demonstrated that he holds an enforceable claim in the bankruptcy case, and Trustee's objection to this component of Creditor's proof of claim must also be sustained.

### Conclusion

Confronted with Trustee's objection challenging Creditor's right to collect from Debtors personally, and under the relevant limitations statutes, Creditor failed to produce sufficient evidence to support his proof of claim. Accordingly, Trustee's objection to Creditor's proof of claim will be sustained, and Creditor's claim will be disallowed by separate order.