# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51061-2023

CAMP MAGICAL MOMENTS,              )
CANCER CAMP FOR KIDS,              )
INC., an Idaho non-profit          )
corporation,                       )
                                   )          **Boise, October 2025 Term**
    **Plaintiff-Appellant-**         )
    **Cross Respondent,**             )          **Opinion Filed: February 6, 2026**
                                   )
**v.**                             )          **Melanie Gagnepain, Clerk**
                                   )
TOM WALSH and ANN T. WALSH,        )
husband and wife,                  )
                                   )
    **Defendants-Respondents**        )
    **Cross Appellants.**             )
_____    )

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Canyon County. Bruce L. Pickett, District Judge.

The judgment of the district court is <u>affirmed in part</u>, <u>vacated in part</u>, and <u>remanded</u> for additional proceedings consistent with this opinion.

Smith, Driscoll & Associates, PLLC, Idaho Falls, attorneys for Appellant-Cross Respondent. Buster Joe Driscoll argued.

Carey Law, PLLC, Idaho Falls, attorneys for Respondents-Cross-Appellants. Donald F. Carey argued.

_____

BEVAN, Chief Justice.

This appeal arises from a dispute between Camp Magical Moments, Cancer Camp for Kids, Inc. ("CMM") and Tom and Ann Walsh ("the Walshes") concerning the valuation and disposition of buildings owned by CMM but located on real property owned by the Walshes. CMM sued the Walshes seeking damages for the difference between the appraised value of its buildings and the amount received following the sale of the property. After a bench trial, the district court entered judgment for CMM on its claims for constructive fraud, unjust enrichment, and breach of fiduciary duty. The court found that CMM sustained $309,506.84 in damages but reduced that award by

50% under the doctrines of comparative negligence and duty to mitigate/avoidable consequences, entering a final judgment of $154,753.42. The court denied attorney fees to both parties. After judgment was entered on May 24, 2023, CMM registered the judgment in North Carolina on June 14, 2023, and received payment in full, including post-judgment interest on June 27, 2023. Despite this satisfaction, CMM appealed the district court's reduction of damages and denial of attorney fees. The Walshes cross-appealed, arguing that the election-of-remedies doctrine bars CMM's appeal and that the district court erred by rejecting various affirmative defenses and by finding that Ann Walsh breached her fiduciary duties. For the reasons below, we affirm in part, vacate the judgment in part, and remand.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

This dispute stems from the sale of the Hanson Guest Ranch, owned by Tom and Ann Walsh. The Walshes acquired title to the ranch in 2003, intending to operate it as a bed and breakfast. In 2004, Ann founded CMM, a camp for children with cancer and their families, and invited several volunteers, including her husband, Tom, to serve on its board. Between 2010 and 2013, CMM used donations of money, materials, and labor to construct three buildings: a 1,400-square-foot boys' bunkhouse, a 1,700-square-foot girls' bunkhouse, and a 3,200-square-foot multi-purpose building. All were connected to existing utilities. The Walshes executed quitclaim deeds transferring ownership of the buildings to CMM, but the land beneath them remained theirs. Acting on legal advice, CMM used the buildings exclusively for camp activities, separate from the guest ranch's business operations.

In March 2020, the Walshes were in the process of getting a divorce. In dividing their assets, the couple decided to sell the guest ranch. Their realtor recommended an appraisal. The resulting April 2020 report ("First Appraisal") valued the ranch, including the CMM buildings, at $1,110,000. The Walshes, disappointed by that figure, believed the property was worth substantially more.

On May 20, 2020, the Walshes informed the CMM Board of their intent to sell the property. Counsel for CMM presented several options. CMM could: (1) make an offer to buy the ranch, (2) relocate its buildings, or (3) sell the buildings as part of the ranch sale and receive a share of the proceeds. The Walshes acknowledged their conflict of interest, recusing themselves from voting on how CMM would proceed with the sale, but not from board participation generally.

2

During that meeting, several board members asked whether the First Appraisal specified the values for each of the individual buildings. Tom said it did not, explaining that the three CMM structures comprised 22.69% of the total square footage of all improvements, valued at $75 per square foot. The Walshes testified that they had not read the First Appraisal in full, only the sections containing that information.

Counsel advised the Board to reconvene and further discuss valuation and compensation. The Board, absent the Walshes who had recused themselves, voted to sell the CMM buildings as part of the ranch and planned to discuss the matter further at a future meeting to be held on June 3. Afterward, Ann called Janice Duncan, CMM's treasurer, and told her the Walshes would not share the First Appraisal with CMM's Board because it contained personal financial information.

At the June 3 meeting, the Board discussed Ann's continued involvement, the $1.8 million listing price for the ranch property (including CMM's buildings), and a potential buyer's interest in continuing camp operations. However, the Board did not determine or vote on the amount of proceeds CMM would accept for its buildings.

An offer for $1.7 million followed, supported by a second appraisal ("Second Appraisal"). Board members exchanged emails regarding the sale and received legal advice that they could obtain their own appraisal or negotiate the sale terms. However, the Board took no action. On June 24, Duncan, acting on behalf of CMM, signed an addendum to the Walshes' purchase and sale agreement, accepting 22.69% of the sale proceeds and a corresponding share of costs.

The sale closed on August 3, 2020. CMM received $361,288.11. Months later, Duncan reviewed the Second Appraisal and discovered it did, in fact, assign specific values to the buildings and that they were worth substantially more than what CMM received. The same was true of the First Appraisal.

## B. Procedural Background

Subsequently, CMM filed a complaint against the Walshes. In its complaint, CMM alleged that the Walshes had committed fraud and constructive fraud. CMM also claimed that the Walshes had been unjustly enriched and that CMM was entitled to a constructive trust. These claims were based on the Walshes' alleged misrepresentations, specifically the Walshes' representations that the First Appraisal did not include building valuations and that CMM's interest in the sale could only be valued at 22.69% of the sale proceeds. On October 19, 2022, the Walshes moved for

3

summary judgment, which the district court granted as to CMM's fraud claim and request for the imposition of a constructive trust.

A three-day bench trial began on April 3, 2023, on CMM's claims for constructive fraud, breach of fiduciary duty, and unjust enrichment. Following the trial, the district court issued its findings of fact and conclusions of law. The district court found in favor of CMM as to each claim. As part of its findings, the district court calculated that CMM's actual damages were $309,506.84, but the court reduced the award by 50%, finding "each party equally liable for the damages under the theories of avoidable consequences and contributory negligence." The district court entered judgment for CMM for $154,753.42. CMM later filed a motion for an award of prejudgment interest, which the district court denied.

In a subsequent motion for reconsideration, CMM asked the district court to reconsider its findings of fact and conclusions of law, to reconsider its reduction of CMM's damages award, and to reconsider its determination that neither party prevailed for purposes of awarding attorney fees and costs. Following oral argument, the district court denied the motion for reconsideration. Thereafter, CMM appealed, and the Walshes cross-appealed.

## II. ISSUES ON APPEAL

1. Whether CMM's appeal is barred by the doctrine of election of remedies.
2. Whether the district court committed reversible error by reducing CMM's damages award.
3. Whether the district court erred in finding that the affirmative defense of superseding intervening cause was not a complete bar to an award of damages.
4. Whether the district court erred in failing to find that CMM's damages were barred by the doctrine of unclean hands.
5. Whether the district court erred in finding that Ann Walsh breached her fiduciary duty.
6. Whether the district court committed reversible error by denying CMM's motion for prejudgment interest.
7. Whether CMM is entitled to attorney fees on appeal.

## III. STANDARDS OF REVIEW

"This Court's review of a trial court's conclusions following a bench trial is limited to determining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law." *Burns Concrete, Inc. v. Teton County*, 168 Idaho 442, 451, 483 P.3d 985, 994 (2020) (citation omitted). "We exercise free review over the trial court's conclusions of law to determine whether the trial court correctly stated the applicable law and whether its legal conclusions are sustained by the facts found." *Id.* (citation omitted).

4

"The determination of whether a party prevailed for purposes of an attorney fee award is a discretionary decision of the trial court." *Allen v. Campbell*, 169 Idaho 125, 129, 492 P.3d 1084, 1088 (2021) (quoting *Wadsworth Reese, PLLC v. Siddoway & Co.*, 165 Idaho 364, 369, 445 P.3d 1090, 1095 (2019)). This Court also reviews an award of prejudgment interest for an abuse of discretion. *Choice Feed, Inc. v. Montierth*, 168 Idaho 124, 151, 481 P.3d 78, 105 (2021) (citation omitted).

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of four essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Gilbert v. Radnovich*, 171 Idaho 566, 572, 524 P.3d 397, 403 (2023) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## IV. ANALYSIS

### A. The election of remedies doctrine does not bar CMM's appeal.

The Walshes contend that because CMM elected to enforce the district court's judgment by registering it in North Carolina, and because the judgment was paid in full, the election-of-remedies doctrine precludes CMM from pursuing an appeal. We disagree.

Following the district court's entry of a money judgment in the amount of $154,753.42 in CMM's favor, CMM filed a notice of foreign judgment in North Carolina. In support of the filing, Duncan submitted an affidavit stating that CMM had obtained a judgment against Ann Walsh and that, as of June 6, 2023, the full amount plus post-judgment interest remained unpaid. Thereafter, at a hearing on CMM's motion for reconsideration, the Walshes' counsel delivered two checks to CMM's counsel, totaling $154,753.42. One week later, the Walshes' counsel hand-delivered a check for $915.95 to satisfy the outstanding post-judgment interest. After CMM received the Walshes' checks, it filed its notice of appeal on August 3, 2023.

On appeal, the Walshes emphasize that, by registering the judgment, Duncan represented it to the people of North Carolina as a final judgment. The Walshes also assert more broadly that CMM could either pursue collection or appeal the judgment—but not both. CMM responds that the election-of-remedies doctrine is "an antiquated doctrine of questionable validity in Idaho" and further argues that because it seeks to increase, rather than duplicate, the district court's award, there is no risk of double recovery.

"Election of remedies is the right of a party in an action to choose one of two or more coexisting remedial rights, where such rights arise out of the same facts . . . ." *Largilliere Co. v. Kunz*, 41 Idaho 767, 772, 244 P. 404, 405 (1925). However, this right is "generally limited to a choice by a party between inconsistent remedial rights; the assertion of one being necessarily repugnant to or a repudiation of the other." *Id.* As this Court explained:

> As a general rule, an election of remedies is any decisive act of a party, with knowledge of his rights and of the facts, that indicates an intent to pursue one remedy rather than the other. To a proper application of this rule at least three things are essential: (1) There must be in fact two or more coexisting remedies between which the party has the right to elect; (2) the remedies thus open to him must be inconsistent; and (3) he must, by actually bringing his action or by some other decisive act, with knowledge of the facts, indicate his choice between two inconsistent remedies. Where the remedies are so inconsistent that the pursuit of one necessarily involves or implies the negation of the other, the party who deliberately, and with full knowledge of the facts, invokes one of such remedies is said to have made his election, and cannot thereafter have the benefit of the other.

*Id.*

Describing the doctrine as "an ancient doctrine created by the courts," the Idaho Court of Appeals has observed that "[w]here the term 'election of remedies' has no substantive meaning apart from the principles of satisfaction, claim preclusion or estoppel, it should not be invoked as a separate doctrine." *Keesee v. Fetzek*, 106 Idaho 507, 509–10, 681 P.2d 600, 602–03 (Ct. App. 1984). The court further explained:

> If a plaintiff is said to have 'elected' a remedy, through certain acts or statements prior to litigation, the proper inquiry should be whether the defendant has relied upon such acts or statements and, therefore, would be unfairly prejudiced by assertion of a different, inconsistent remedy. If so, the plaintiff should be bound to the remedy earlier chosen, not because of the election doctrine but because of the estoppel principle. Absent estoppel, he should be free to choose a different remedy.

*Id.* at 510–11, 681 P.2d at 603–04.

These authorities establish that the election of remedies doctrine has limited reach. Given its limitations, we hold that it does not preclude CMM's appeal. The doctrine serves only to prevent pursuit of two inconsistent remedial rights. *Largilliere*, 41 Idaho at 772, 244 P. at 405. To be inconsistent, the remedies must be so contrary to one another "that the pursuit of one necessarily involves or implies the negation of the other . . . ." *Id.* CMM's appeal is not inconsistent with registering the judgment or pursuing collection efforts. In pursuing collection, CMM sought satisfaction of what it deemed a partial judgment; in pursuing this appeal CMM argues it should

have been awarded additional damages, which would increase the amount of the judgment. As a result, there is no inconsistency between the judgment and CMM's arguments on appeal, and consequently there is no violation of the election of remedies doctrine.

We addressed this very question in *Hatfield v. Max Rouse & Sons Northwest*, when we observed that "partial payment of a judgment is not inconsistent with an appeal." 100 Idaho 840, 844, 606 P.2d 944, 948 (1980) (citing *Backman v. Douglas*, 46 Idaho 671, 270 P. 618 (1928)). Even full satisfaction of one portion of a judgment does not preclude appeal from another, independent portion. *Id.* (citing *Henderson v. Nixon*, 66 Idaho 780, 786, 168 P.2d 594, 596 (1945)). Although these cases did not involve full satisfaction of the judgment, neither case suggests that seeking satisfaction of a judgment would bar a party from filing an appeal, arguing that the district court erred in reducing the amount of the judgment.

Consistent with this view, the Idaho Court of Appeals has recognized:

> In some situations, acceptance of payment of a judgment acts as a bar to an appeal challenging the sufficiency of that judgment . . . [but] if the creditor does not risk obtaining a less favorable judgment on appeal, then acceptance of payment is not an accord and satisfaction and the creditor may appeal to seek a larger judgment.

*Strother v. Strother*, 136 Idaho 864, 868, 41 P.3d 750, 754 (Ct. App. 2002) (internal citation omitted).

The Walshes' argument rests on the premise that initiating an appeal is inconsistent with enforcing a judgment. But CMM's appeal challenges (1) the district court's reduction of damages, (2) its prevailing party determination, and (3) its denial of prejudgment interest—matters that do not put at risk the judgment on which it has collected. Thus, its actions are consistent with collection of the judgment awarded. CMM's appeal simply seeks a larger overall judgment.

The Walshes further contend that the doctrine should apply because, by registering the judgment in North Carolina, and accepting Walshes' payments, CMM is basically estopped from pursuing an appeal that would "undo" the finality of the registered judgment. At bottom, this argument is logically indistinguishable from the Walshes' other argument on election of remedies. Thus, it fails for the same reasons we have already articulated. Nothing precludes CMM from pursuing an increased judgment in this appeal.

Although CMM registered the judgment in North Carolina, the Walshes had recourse to stay its enforcement. As a North Carolina statute sets forth:

7

> A judgment so filed has the same effect and is subject to the same defenses as a judgment of this State and shall be enforced or satisfied in like manner; *provided however, if the judgment debtor files a motion for relief or notice of defense pursuant to G.S. 1C-1705, enforcement of the foreign judgment is automatically stayed*, without security, until the court finally disposes of the matter.

N.C. GEN. STAT. § 1C-1703(c) (emphasis added). Moreover, North Carolina law also provides: "The judgment debtor may file a motion for relief from, or notice of defense to, the foreign judgment on the grounds that the foreign judgment has been appealed from[.]" N.C. GEN. STAT. § 1C-1705(a).

Rather than availing themselves of these statutory protections, or seeking a stay of the proceedings, the Walshes chose to satisfy the judgment. *See* I.A.R. 13. CMM's decision to accept payment on the uncontested part of its judgment did not preclude it from pursuing an appeal in this instance.

Adopting the Walshes' position would unduly restrict a prevailing party's right to appellate review. It would place creditors in an untenable position by forcing them to choose between (1) timely enforcing a judgment they consider inadequate, or (2) pursuing appellate remedies that might provide them the full amount of relief to which they were entitled. Idaho law does not compel such a choice.

**B. The district court committed reversible error by reducing CMM's damage award.**

CMM argues that the district court committed reversible error by reducing its damage award. CMM offers two arguments in support of this assertion. First, CMM argues that the district court erred by reducing the award under a theory of comparative negligence. Second, CMM claims that the district court erred by finding that CMM had a duty to mitigate its damages.

*1. Comparative Negligence*

CMM first argues that the district court committed reversible error by reducing its damage award under the doctrine of comparative negligence. According to CMM, that theory does not apply to claims for constructive fraud, breach of fiduciary duty, or unjust enrichment. The Walshes counter that CMM mischaracterizes the district court's decision, asserting that "[n]owhere in the trial court's written opinion, or in its ruling from the bench on reconsideration, does the trial court even mention applying a comparative negligence analysis to reduce CMM's damages." The Walshes misstate the record.

In its findings of fact and conclusions of law, the district court plainly stated:

> [The Walshes] have also plead the affirmative defense of comparative negligence. In asserting this defense it is the burden of [the Walshes] to prove all the elements of a negligence claim against [CMM]. An analysis of [CMM's] behaviors under the four elements of a negligence claim yields a finding that [CMM's] failure to perform any due diligence in confirming the information given by [the Walshes] or attempting to negotiate a different method of calculating their share of the proceeds contributed to their own injury. As discussed previously, both the Board of Directors and [the Walshes] had an equal duty to act in CMM's best interest and they both failed to do so.

The district court expressly referenced negligence and comparative negligence and reduced CMM's damages based on that analysis under Idaho Code section 6-801. This was error. Idaho Code section 6-801 defines the scope of contributory negligence:

> *Contributory negligence or comparative responsibility shall not bar recovery in an action by any person or his legal representative to recover damages for negligence, gross negligence or comparative responsibility resulting in death or in injury to person or property*, if such negligence or comparative responsibility was not as great as the negligence, gross negligence or comparative responsibility of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence or comparative responsibility attributable to the person recovering. Nothing contained herein shall create any new legal theory, cause of action, or legal defense.

I.C. § 6-801 (emphasis added).

By its plain language, section 6-801 applies only to actions seeking damages "for negligence, gross negligence or comparative responsibility resulting in death or in injury to person or property." *Id.* The statute does not authorize a district court to apportion fault or reduce damages in equitable or fiduciary actions, nor does it create a new defense in cases grounded in fraud or unjust enrichment.

CMM brought four claims to trial: (1) constructive fraud; (2) breach of fiduciary duty; (3) breach of fiduciary duty as a director of a nonprofit corporation; and (4) unjust enrichment. CMM brought no claim sounding in negligence. Because CMM did not seek damages "for negligence, gross negligence or comparative responsibility," the Walshes' comparative negligence defense was inapplicable. The district court's reliance on that defense was therefore error.

The Walshes also rely on Idaho Code section 6-802, asserting that it requires a comparison of the parties' respective responsibilities. Their reliance is misplaced. Section 6-802, like section 6-801, concerns negligence. Indeed, the title of the chapter in which the statute appears is "Actions for Negligence." The statute provides that the district court:

[M]ay, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence or comparative responsibility attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence or comparative responsibility attributable to the person recovering.

I.C. § 6-802.

Section 6-802 governs the allocation of fault in negligence actions and prescribes how a trier of fact apportions responsibility among parties seeking to recover for negligence, gross negligence, or comparative responsibility. The Walshes' reading of the statute is inapt and provides no basis for the district court's reduction of CMM's damages.

In its conclusions of law, the district court found:

[T]hat [the Walshes] engaged in actions that breached their fiduciary duty to CMM and engaged in constructive fraud. [CMM] has been injured and [the Walshes] have been unjustly enriched by [the Walshes'] actions. The [c]ourt also finds that [CMM] contributed to [its] own injury by failing in [its] fiduciary duties to further investigate the value of [its] interests, failing to follow advice of counsel, and failing to negotiate with [the Walshes] what [it] would receive from the proceeds of sale. These failings were avoidable and contributed to [its] own injury.

Based on this reasoning, the district court reduced CMM's damages from $309,506.84, the "potential damage award," to $154,753.42, or by half. The court concluded that "each party [is] equally liable for the damages under the theories of avoidable consequences and contributory negligence," and accordingly "reduce[d] the potential damage award by 50%[.]" By doing so, the district court committed reversible error.

*2. Duty to mitigate / Avoidable consequences*

CMM further contends that the district court improperly imposed a post hoc duty to mitigate damages, providing an additional ground for reversal. The Walshes respond that the district court "expressly found that CMM simply did nothing to protect [its] own interests."

The duty to mitigate, which is also known as the doctrine of avoidable consequences, is "an affirmative defense that provides for a reduction in damages where a defendant proves that it would have been reasonable for the plaintiff to take steps to avoid the full extent of the damages caused by the defendant's actionable conduct." *McCormick Int'l USA, Inc. v. Shore*, 152 Idaho 920, 924, 277 P.3d 367, 371 (2012) (citation omitted). The doctrine "seeks to 'discourage even persons against whom wrongs have been committed from passively suffering economic loss which could be averted by reasonable efforts . . . .'" *Id.* (alteration in original) (quoting *Indus. Leasing Corp. v. Thomason*, 96 Idaho 574, 577, 532 P.2d 916, 919 (1974)). "Whether it is reasonable to

10

expect a plaintiff to perform specific acts of mitigation is a question of fact." *Id.* (citing *Casey v. Nampa & Meridian Irrigation Dist.*, 85 Idaho 299, 307, 379 P.2d 409, 413 (1963)). The defendant bears the burden to prove that the proposed means of mitigation were reasonable, could be accomplished at reasonable cost, and were within the plaintiff's ability—and "[p]roof of the latter of these three requires more than a mere suggestion that a means of mitigation exists." *Id.*

The district court's application of the doctrine of avoidable consequences is problematic because it misapplies the governing legal standard. As the doctrine makes clear, the duty arises only *after* a party has suffered an injury and then has the opportunity to take reasonable steps to lessen the resulting harm. *See id.* Here, CMM could not have mitigated its damages before it knew an injury had occurred. The district court faulted CMM for failing to investigate the value of the buildings or challenge the Walshes' representations before the sale closed. But those actions occurred *before* CMM had any knowledge of its injury. This timing issue is dispositive: the duty to mitigate generally arises only after damages are discovered.

CMM did not discover the misrepresentations or their effect on the sale until after the transaction concluded. But by then, the injury and the damages were complete. CMM had no opportunity to mitigate its damages. The district court also found that the Walshes had actively discouraged the Board from obtaining an independent appraisal and falsely claimed that the First Appraisal contained confidential financial information. These findings indicate that CMM never had the ability to avoid or mitigate the damages it sustained.

Under these circumstances, the doctrine of avoidable consequences does not apply. Because CMM did not learn of the injury until after the sale, it had no reasonable opportunity to mitigate its damages. The district court's reliance on the doctrine of avoidable consequences was therefore erroneous.

The rule does not apply in circumstances where the injured party did not know of the injury and damages until after transaction was complete, and CMM cannot be faulted for failing to mitigate losses it did not know existed. As such, the district court here acted inconsistently with the applicable legal standards. *See Gilbert v. Radnovich*, 171 Idaho 566, 572, 524 P.3d 397, 403 (2023) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)). Because we conclude that the district court erred in reducing CMM's damages under the legal theories presented, we need not consider whether the district court's conclusion was unsupported by the court's findings of fact.

11

**C. The district court properly precluded the Walshes' affirmative defense of superseding intervening cause.**

On cross-appeal, the Walshes argue that the district court erred when it found that their superseding intervening cause affirmative defense was not a complete bar to a damages award. In their motion for summary judgment, the Walshes asserted that the CMM Board's failure to fulfill its duties in relation to the sale of CMM constituted a superseding intervening cause of CMM's damages, which precluded any liability on the part of the Walshes. This argument stemmed from a board vote in May 2020 to sell the CMM buildings along with the guest ranch property in a single sale. When the meeting concluded, the Board had not determined the value of the buildings. The Walshes argued that CMM's Board was obligated under Idaho Code section 30-30-618(2) to solicit more data so that it could make an informed decision about the liquidation of the buildings. Because it failed to do so, the Walshes argue that any monetary loss suffered by CMM fell on the Board, not the Walshes.

"A superseding cause is an act of a third person or other force which[,] by its intervention[,] prevents the actor from being liable for harm to another which his *antecedent negligence* is a substantial factor in bringing about." *Cramer v. Slater*, 146 Idaho 868, 877, 204 P.3d 508, 517 (2009) (emphasis added) (quoting *Mico Mobile Sales & Leasing, Inc. v. Skyline Corp.*, 97 Idaho 408, 411-12, 546 P.2d 54, 57-58 (1975)).

In its memorandum decision on the Walshes' motion for summary judgment, the district court rejected the Walshes' defense, finding that they had waived the argument by accepting the benefit of the sale:

> In reviewing the record, it is the [c]ourt's view that CMM did not strictly comply with the statutory standard set forth in Idaho Code section 30-30-613 in regard to authorizing Janice Duncan to sell the CMM buildings. However, the Walshes fully accepted the benefit of Ms. Duncan's actions in selling the CMM buildings as a whole with the ranch property. Essentially, by accepting the benefit of the sale, the Walshes have waived this argument.

As stated above, it is important to clarify that a "superseding cause" shields an actor from "being liable for harm to another which his *antecedent negligence* is a substantial factor in bringing about." *Cramer*, 146 Idaho at 877, 204 P.3d at 517 (emphasis added) (quoting *Mico Mobile Sales & Leasing, Inc.*, 97 Idaho at 411-12, 546 P.2d at 57-58). As with the affirmative defenses for contributory negligence and the duty to mitigate, a superseding cause is only relevant to a claim for *negligence*. CMM did not assert a cause of action for negligence before the district court. As

12

such, this defense does not apply. *See Empire Lumber Co. v. Thermal-Dynamic Towers, Inc.*, 132 Idaho 295, 301, 971 P.2d 1119, 1125 (1998) (holding that affirmative defenses based in tort are unavailable to claims brought under contract principles); *see also O'Holleran v. O'Holleran*, 171 Idaho 671, 676-77, 525 P.3d 709, 714-15 (2023) ("[T]ort claims, which are legal in nature, should be kept separate from divorce actions, which are equitable in nature." (quoting *Noble v. Noble*, 761 P.2d 1369, 1371 (Utah 1988))); *Rivers v. Otis Elevator*, 996 N.E.2d 1039, 1047 (2013) ("[T]he clean hands doctrine is a defense against claims in equity . . . [which] does not apply where a party is not attempting to invoke the equitable powers of the court." (citation omitted)).

And though the district court rejected this defense, it did so under the premise that the Walshes had waived it because they accepted the benefit of the sale of the CMM buildings, not under the theory that the defense was inapplicable to claims brought under contract principles. "[W]here an order of the district court is correct but based upon an erroneous theory, this Court will affirm upon the correct theory. This doctrine is sometimes called the 'right result-wrong theory' rule." *Herndon v. City of Sandpoint*, 172 Idaho 228, 240, 531 P.3d 1125, 1137 (2023) (alteration in original) (quoting *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017)). Applied here, we hold that the district court properly precluded the defense, though we reach our holding on a different ground: that the defense was not available to the Walshes as a matter of law.

## D. The district court did not abuse its discretion in failing to find that CMM's damages were barred by the doctrine of unclean hands.

The Walshes allege that the district court erred in denying unclean hands as an affirmative defense because the three claims that CMM prevailed on—constructive fraud, breach of fiduciary duty, and unjust enrichment—all arise in equity. CMM responds that, though the court found that CMM could have done more to determine the value of its buildings, the court did not find any of CMM's conduct to be intentionally inequitable, unfair, dishonest, fraudulent, or deceitful. As found by the district court:

> Additionally, [the Walshes] plead the affirmative defense of unclean hands, alleging that the [B]oard's failure to follow [CMM's lawyer's] recommendation that it conduct its own analysis of the value of the CMM buildings constituted conduct deemed "inequitable, unfair and dishonest, fraudulent and deceitful." The [c]ourt must note the irony in this plea as it has been clearly established by the facts that if any party acted in a manner which was inequitable, unfair and dishonest, and fraudulent and deceitful, it was the [Walshes], who had the information in hand and

13

who, whether purposefully or through their own negligence, made the false and misleading statements that bring this matter before the [c]ourt.

(Footnote omitted).

The Walshes' sole argument on this issue is as follows:

Although the trial court discussed the defense of unclean hands in its written decision, and although it is clear from the court's decision on reconsideration . . . that the CMM [Board] failed miserably in its duties to the organization, [the court] granted relief on the three remaining equity claims. Respectfully, this is error.

The initial problem with the Walshes' argument is that a trial court's decisions in equity are discretionary and are reviewed under the abuse of discretion standard. *See Lunneborg v. My Fun Life*, 163 Idaho 856, 867, 421 P.3d 187, 198 (2018) ("As a general principle, the trial court is granted broad discretion in fashioning equitable relief." (citation omitted)). The Walshes must do more than merely allege error in the district court's decision; the Walshes must analyze whether the district court abused its discretion in denying their defense. They did not do so, nor did they grapple with any of the elements for the unclean hands defense. "Failing to demonstrate that an abuse of discretion occurred under any part of the [*Lunneborg*] test . . . is fatal to [an] argument that the [trial] court abused its discretion." *Gilbert*, 171 Idaho at 582, 524 P.3d at 413 (all but first alteration in original) (quoting *Smith v. Smith*, 167 Idaho 568, 584, 473 P.3d 837, 853 (2020)). The Walshes make no reference to the district court's decision being one of discretion, which is fatal to their appeal.

Moreover, the district court's decision to reject the unclean hands defense was premised on the Walshes' failure to establish that CMM acted in an "inequitable, unfair and dishonest, or fraudulent and deceitful" manner. Neither below, nor on appeal, have the Walshes established that CMM engaged in such misconduct. As such, the district court decision is affirmed.

## E. The district court did not err in finding that Ann Walsh breached her fiduciary duty.

Finally, the Walshes allege that the district court erred in its finding that Ann Walsh breached her fiduciary duty because she did not owe CMM any fiduciary duties. At the outset, we note that the district court found that *both* Walshes breached their fiduciary duties to the Board. The district court found:

- "[B]oth the Board of CMM and Tom and Ann Walsh owed fiduciary duties to CMM."
- "Tom and Ann breached their continuing fiduciary duties when they knowingly or negligently gave incorrect information which they knew, or should have known, that the

14

board would rely on given their longstanding relationship with CMM, particularly Ann as the Chairman of the Board."

- "Tom and Ann had a fiduciary duty to provide CMM with the appraisal for their own inspection but indicated to Janice Duncan that they would not do so, claiming the appraisal contained their personal financial information, which was also false."

Based on "these facts," the district court found that both of the Walshes "breach[ed] their fiduciary duties to CMM."

Even so, the Walshes have only appealed these findings as to Ann, implicitly conceding that the district court correctly determined that Tom breached his fiduciary duties. By failing to address the district court's finding of liability as to Tom, the Walshes have waived this claim as to his liability. *See VanRenselaar v. Batres*, ___ Idaho ___, ___, 575 P.3d 866, 879 (2025) (citing *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010)).

CMM maintains that, as chairwoman of the Board, Ann owed and breached her fiduciary duty to CMM. The duties for directors are governed under Idaho Code section 30-30-618:

GENERAL STANDARDS FOR DIRECTORS. (1) A director shall discharge his duties as a director, including his duties as a member of a committee:

(a) In good faith;

(b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

(c) In a manner the director reasonably believes to be in the best interests of the corporation.

(2) In discharging his duties, a director is entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, if prepared or presented by:

(a) One (1) or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented;

(b) Legal counsel, public accountants or other persons as to matters the director reasonably believes are within the person's professional or expert competence; . . . .

I.C. § 30-30-618(1)–(2)(a), (b).

Evaluating Ann's actions under the statute, the district court found:

While it can be argued that the remaining board members did act in good faith and with the care of an ordinarily prudent person in a like position would under similar circumstances and in a manner they reasonably believed to be in the best interest of

15

CMM when they relied on representations made by other board members whom they understood to have more knowledge (the [F]irst [A]ppraisal) and, as the original purchasers of the ranch, more experience in the sale of this type of real estate, the same cannot be argued for [the Walshes]. It is this [c]ourt[']s position that [the Walshes] did not act in good faith or with the appropriate amount of care. A reasonably prudent person engaged in this type of transaction would read the appraisal in its entirety. A person acting in good faith and in the best interest of this worthy non-profit that they built from conception to fruition, would recognize the need to be fully informed and to share any and all information they had with the other members of the board. [The Walshes] did not. Not only did they fail in this regard, but they discouraged the board from obtaining [its] own appraisal. As the [c]ourt has previously stated, [the Walshes] had the same duty to act in good faith and for the ultimate benefit of CMM as the rest of the board members. . . .

. . . .

Contrary to [the Walshes'] argument, statute dictates that a director, in discharging his duties, is entitled to rely on information, including financial data, if presented by one or more officers if that director reasonably believes [sic] to be reliable and competent in the matters presented. It is easily inferred from the testimony and facts presented at trial that each of the other board members believed that they could rely on [the Walshes'] statements, including the representations of what financial information was available in the appraisal, as it was presented to them by [the Walshes]. . . .

. . . .

. . . [The Walshes], as board members, did not act in good faith as they did have knowledge, or should have had the knowledge, to answer the questions of the board, and therefore did not act in compliance with [Idaho Code section] 30-30-618.

After careful analysis of the [b]reach of [f]iduciary [duty] claim and the applicable affirmative defenses plead, it is the decision of this [c]ourt that both the [b]oard and [the Walshes] breached their respective fiduciary duties to CMM and both are equally liable for the damages that resulted from these failures.

(Footnote omitted).

The Walshes emphasize that directors do not owe a fiduciary duty for their own private property. Their assertion is correct. *See Stephan v. Hoops Constr. Co.*, 115 Idaho 894, 896, 771 P.2d 912, 914 (1989) ("We find no authority for the proposition that a corporate officer's *fiduciary* duty extends to non-corporate assets such as the stock holdings of individual shareholders." (emphasis in original)); *Hines v. Hines*, 129 Idaho 847, 850, 934 P.2d 20, 23 (1997) ("We recognize the general rule that there is no fiduciary duty between shareholders or between an officer and a shareholder regarding non-corporate assets, such as an individual's private stock holdings.). But there is no legal support for the Walshes' attempt to extend that argument to

16

conclude that there is no fiduciary duty when a director sells business and personal assets together as part of one transaction.

This argument challenges the district court's decision based on a misrepresentation of what the district court decided. There is no suggestion that the Walshes owed fiduciary duties to CMM from the sale of the Walshes' personal property. The breach of fiduciary duty claim stems from an allegation that Ann had a duty to speak when Tom represented that the First Appraisal did not include separate values for the CMM buildings. The breach of fiduciary duty did not arise because the Walshes sold their personal property. The breach arose because the Walshes did not act in good faith when they misrepresented the content of the First Appraisal to the rest of the Board and then discouraged the Board from obtaining another appraisal.

Because the district court's conclusion that Ann, as chair of the Board, owed a fiduciary duty to CMM, which she breached, was supported by the district court's findings of fact, and those findings were supported by substantial and competent evidence, the court's decision is affirmed.

## F. The district court did not abuse its discretion by denying CMM's motion for prejudgment interest.

CMM asserts that the district court abused its discretion in declining to award prejudgment interest because it awarded CMM $154,753.42 in damages by its own mathematical computation. CMM alleges that the district court failed to act within the outer bounds of its discretion or consistently with applicable legal standards because the court placed undue emphasis on the fact that the claim was disputed and litigated, which required the court to make a finding of fact to arrive at the value of the property. The Walshes do not respond to this argument.

In a hearing to resolve CMM's motion for reconsideration, the district court also heard oral argument on CMM's motion for prejudgment interest. At that hearing, the district court denied CMM's motion:

> The [c]ourt finds in this case the prejudgment interest is not appropriate as the [c]ourt had to make some findings to arrive at a value of the property. As such, it could have decided, based upon the different factors, a value. The [c]ourt ultimately decided to go with the higher value from the [S]econd [A]ppraisal as that was more closer to the sale, which the [c]ourt felt like was a newer credible claim. The [c]ourt went with that.
>
> However, certainly there was argument made, as well as testimony, that the [c]ourt could have chosen various amounts for the property. So the award of prejudgment interest is denied.

The district court's decision was not an abuse of discretion.

17

"It is settled law in Idaho that pre-judgment interest is available only when damages are liquidated or are ascertainable by mere mathematical process." *Bouten Constr. Co. v. H.F. Magnuson Co.* (*Bouten II*), 133 Idaho 756, 762, 992 P.2d 751, 757 (1999).

> A claim is liquidated [or ascertainable] if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. Examples are claims upon promises to pay a fixed sum, claims for money had and received, claims for money paid out, and claims for goods or services to be paid for at an agreed rate.

*AgStar Fin. Servs., ACA v. Nw. Sand & Gravel, Inc.*, 168 Idaho 358, 371, 483 P.3d 415, 428 (2021) (alteration in original) (quoting *Ross v. Ross*, 145 Idaho 274, 277, 178 P.3d 639, 642 (Ct. App. 2007)).

We have stated that "[t]he mere fact that a claim is disputed or litigated does not render damages unascertainable." *Id.* (citation modified). However, "[a] claim is unliquidated or unascertainable where some factor necessary to calculate the amount of damages must be determined by a trier of fact." *Id.* (citation omitted). Valuations that rely on the actual amount paid, such as the price obtained at auction, are usually liquidated damages. *Id.* at 372, 483 P.3d at 429. Fair market valuations, which often require the trier of fact to determine a necessary value factor, are usually unliquidated. *Id.*

CMM sought an award of prejudgment interest based on a claim that required the trier of fact to determine a necessary factor in order to award damages—the relative value of CMM's buildings. While the total value of the ranch was readily ascertainable (due to the sale), the value of CMM's buildings was murky at best. There were at least four different valuations for CMM's property that the district court considered. Two valuations came from the official appraisals done on the property. The First Appraisal valued CMM's buildings at $767,859.77. The Second Appraisal valued the CMM buildings at $955,878.27 ($716,908.70 when accounting for "functional" depreciation). Then, at trial, CMM offered witness testimony as evidence that CMM's buildings were worth $788,000. The Walshes also supplied their own valuation, $609,424, by modifying the reconciled amount supplied by Linford to account for items they believed should not have been included in the valuation.

Out of this array of different values, the district court decided to rely on the valuations found in the Second Appraisal to calculate CMM's damages, since that appraisal was the determining factor in the actual sale of the property. That was an exercise in discretion and a matter of opinion because the court could have chosen a different valuation from among the competing,

viable alternatives provided. Furthermore, the district court could not have calculated CMM's damages without first determining the value of CMM's buildings. Because the district court exercised its discretion in determining the value of CMM's buildings, and because doing so was necessary to calculate CMM's damages, the district court did not abuse its discretion in denying prejudgment interest.

**G. CMM is entitled to costs, but not attorney fees.**

CMM argues it is entitled to an award of attorney fees under Idaho Code sections 12-120(3) and 12-121. The Walshes do not seek attorney fees on appeal.

"[I]n any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." I.C. § 12-120(3). "Under the statute, a court must award attorney fees to the prevailing party in an action to recover on a 'commercial transaction.'" *Breckenridge Prop. Fund 2016, LLC v. Wally Enters., Inc.*, 170 Idaho 649, 662, 516 P.3d 73, 86 (2022) (citation modified) (quoting *Troupis v. Summer*, 148 Idaho 77, 81, 218 P.3d 1138, 1142 (2009)). In this context, "[t]he term 'commercial transaction' is defined to mean all transactions except transactions for personal or household purposes." I.C. § 12-120(3).

CMM argues that the claims it prevailed on arose from negotiations for and the sale of CMM's buildings as part of the guest ranch, which was a commercial transaction. The gravamen of the case, according to CMM, arises from the Walshes' false and misleading statements related to the sale of the guest ranch and the value of CMM's buildings. The Walshes counter that, though the sale of the ranch may be integral to the claim, it was not the basis on which the lawsuit was filed, and thus, CMM is not entitled to an award of fees under section 12-120(3). The Walshes are correct.

Under section 12-120(3), the prevailing party in an action arising out of a "commercial transaction" "shall be allowed a reasonable attorney's fee." I.C. § 12-120(3). A "commercial transaction" is defined by the statute as "all transactions except transactions for personal or household purposes." *Id.* Even so, as this Court has consistently explained, the mere involvement of money or property does not, by itself, render a dispute commercial in nature. A reviewing court must examine the gravamen of the claim. *Breckenridge*, 170 Idaho at 664, 516 P.3d at 88 ("Attorney's fees are not appropriate under [Idaho Code section] 12-120(3) unless the commercial transaction is integral to the *claim*, and constitutes the basis upon which the party is attempting to

recover." (citation omitted)); *Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 136 Idaho 466, 471, 36 P.3d 218, 223 (2001) ("[T]he critical test is whether the commercial transaction comprises the gravamen of the lawsuit; the commercial transaction must be integral to the claim and constitute a basis on which the party is attempting to recover." (citation omitted)).

The underlying dispute here did not arise from a commercial contract or business agreement. Rather, CMM prevailed on claims for constructive fraud, breach of fiduciary duty, and unjust enrichment, claims rooted in tort and equity. These claims arose out of the Walshes' conduct as board members of a nonprofit corporation and their fiduciary obligations to that organization, not from a commercial transaction for the exchange of goods or services. While the litigation involved real property and financial considerations, these facts alone do not render the action as one arising out of a commercial transaction. When the allegations underpinning the case are tort-based, notwithstanding a monetary dispute, those claims do not qualify as arising from a commercial transaction. *See Breckenridge*, 170 Idaho at 664, 516 P.3d at 88 ("The claims certainly spun out of a *potential* commercial transaction that Breckenridge hoped to make through a successful bid. Yet its lawsuit was based, not on any transaction, but on independent allegations of equity and tort law." (emphasis original)). The nature of the Walshes' relationship with CMM, director and nonprofit, further removes this dispute from the commercial transaction sphere. There are no allegations that a contract existed between CMM and the Walshes governing the sale or valuation of the buildings. Indeed, CMM disclaimed any contract-based theory of recovery. As a result, CMM is not entitled to an award of fees under section 12-120(3).

CMM also requests attorney fees under Idaho Code section 12-121. "An award of attorney fees under [Idaho Code section 12-121] will be awarded to the prevailing party on appeal only when this Court is left with the abiding belief that the entire appeal was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Id.* at 666, 516 P.3d at 90 (alteration in original) (quoting *Am. Semiconductor, Inc. v. Sage Silicon Sols., LLC*, 162 Idaho 119, 127, 395 P.3d 338, 346 (2017)).

Although the Walshes did not prevail, we do not conclude that they defended this appeal frivolously or without foundation. Thus, CMM is not entitled to an attorney fee award under Idaho Code section 12-121. Below, the Walshes presented fact and expert witnesses at trial, and raised several colorable legal defenses. Their arguments regarding the valuation methodology, the Board's understanding and participation in the transaction, and the applicability of defenses, such

as avoidable consequences and mitigation, raised legitimate, though ultimately unsuccessful, legal questions. While the Walshes did not prevail on any argument other than CMM's prejudgment interest claim, those arguments were not so devoid of merit as to warrant a finding of frivolousness.

As the prevailing party on appeal, CMM is entitled to costs. I.A.R. 40(a).

## V.   CONCLUSION

For the reasons stated above, we reverse the district court's reduction of CMM's damage award, vacate its judgment, and remand with instructions that the district court enter a judgment for the full amount of damages. We likewise remand for the court to reconsider its determination of prevailing party and whether CMM should be awarded its reasonable attorney fees for prosecuting the action. Prevailing party status requires the court to consider the "action as a whole" and to explain the process by which it reached its decision. *Sunnyside Park Utils., Inc. v. Sorrells*, 175 Idaho 601, ___, 568 P.3d 820, 829 (2025) (citation omitted). The district court is tasked with doing so on remand. The district court's remaining rulings are affirmed. CMM is awarded its costs, but not attorney fees, on appeal.


Justices BRODY, MOELLER, ZAHN, and MEYER concur.

21